## WHEATON BUILDING AND LUMBER COMPANY *vs.* CITY OF BOSTON.

Suffolk.    November 10, 1909. — January 7, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Boston.    Contract,* Consideration, Acceptance, Validity, Performance and breach. *Statute,* Construction.    *Mistake.    Damages,* Liquidated.

In an action by a contractor against the city of Boston for the amount of a deposit of $2,000, for which the plaintiff had transmitted a check to the defendant, when he, at the same time with others, in response to an advertisement of the school house commissioners had submitted a bid for the erection of a certain school house, it appeared that the plaintiff had made his bid upon a blank furnished by the defendant, containing a provision, in accordance with the requirements of St. 1890, c. 418, §§ 4-6, that, if within twenty days after the day named for leaving the proposal notice that his proposal would be accepted by the city should be mailed or delivered to him, he would on some day of the six weeks next after such mailing or delivery execute and deliver a contract and bond for doing the work in the form required, and whereby the plaintiff agreed that the certified check payable to the defendant left with his proposal was the defendant's property and that the amount thereof was the amount of the damages which the city would sustain by the plaintiff's failure to carry out his proposal. In accordance with a requirement of the statute, the advertisement inviting proposals for the contract reserved the right to reject any or all proposals. The bid of the plaintiff was the next to the lowest. The bid of the lowest bidder was accepted, but he declined to execute the contract, and the city kept his check. Thereupon, the proposal of the plaintiff was accepted by a letter mailed to him within the time limited in the bid, and the plaintiff refused to execute the contract. The proposal of the next lowest bidder then was accepted, but he also refused to execute the contract, and his check was taken by the city. The next lowest bid was about $24,000 higher. This was accepted, and the bidder executed a contract. *Held,* that, under the provisions of the statute and the terms of the proposal, the previous acceptance of the lowest bid by the defendant, without the execution of a contract, was not a rejection of all the other bids, but left the defendant at liberty to accept the bid of the plaintiff, so that the defendant's

acceptance of the proposal made binding the plaintiff's agreement as to his deposit of the $2,000.

In an action by a contractor against the city of Boston for the amount of a deposit of $2,000, for which the plaintiff had transmitted a check to the defendant, when he, at the same time with others, in response to an advertisement of the school house commissioners had submitted a bid for the erection of a certain school house, it appeared that the plaintiff had made his bid upon a blank furnished by the defendant, containing a provision, in accordance with the requirements of St. 1890, c. 418, §§ 4–6, that, if within twenty days after the day named for leaving the proposal notice that his proposal would be accepted by the city should be mailed or delivered to him, he would on some day of the six weeks next after such mailing or delivery execute and deliver a contract and bond for doing the work in the form required, and whereby the plaintiff agreed that the certified check payable to the defendant left with his proposal was the defendant's property and that the amount thereof was the amount of the damages which the defendant would sustain by the plaintiff's failure to carry out his proposal. In accordance with a requirement of the statute, the advertisement inviting proposals for the contract reserved the right to reject any or all proposals. The statute requires in § 6 that all contracts made by the city of Boston where the amount involved is more than $2,000 shall be in writing and that no such contract shall be deemed to have been made or executed until the approval of the mayor in writing is affixed thereto. The proposal of the plaintiff was accepted by a letter mailed to him within the time limited in the proposal, but the plaintiff refused to execute the contract. *Held*, that the fact that the approval of the mayor was required for the valid execution of a contract did not make the acceptance of the plaintiff's proposal a conditional one, because by implication the invitation of the defendant was for proposals for a contract which required the mayor's approval; and that the agreement of the plaintiff contained in his proposal as to the terms on which he deposited the $2,000, which was in compliance with the requirements of St. 1890, c. 418, was binding upon the plaintiff when accepted by the city, although the city would not be bound until a contract was executed and was approved by the mayor, and was not void for want of mutuality.

If a contractor in making a proposal in writing to a city for a contract for the erection of a school house signs his proposal upon a blank furnished by the city, of which the specifications for the contract are made a part, and owing to an honest but unjustified mistake on his part as to the interpretation of the specifications he underestimates by a large sum the expense to be incurred by the contractor, and names a price so small that after his proposal has been accepted by the city he refuses to execute the contract, his misunderstanding of the legal effect of the proposal voluntarily signed by him is no ground for releasing him from his obligation under the terms of that instrument as accepted by the city.

In an action by a contractor against the city of Boston for the amount of a deposit of $2,000, for which the plaintiff had transmitted a check to the defendant, when he, at the same time with others, in response to an advertisement of the school house commissioners had submitted a bid for the erection of a certain school house, it appeared that the plaintiff had made his bid upon a blank furnished by the defendant, containing a provision, in accordance with the requirements of St. 1890, c. 418, §§ 4–6, that, if within twenty days after the day named for leaving the proposal notice that his proposal would be accepted by the city should be mailed or delivered to him, he would on some day of the six weeks next after such mailing or delivery execute and deliver a contract and bond for doing the

work in the form required, and whereby the plaintiff also agreed that the certified check payable to the defendant left with his proposal was the defendant's property and that the amount thereof was the amount of the damages which the defendant would sustain by the plaintiff's failure to carry out his proposal, but that, if the plaintiff's proposal was not accepted, or if notice was mailed or delivered and the plaintiff executed and delivered the contract and bond required, the check or its amount was to be paid to him on receipt therefor. The proposal of the plaintiff was accepted by a letter mailed to him within the time limited in the proposal, but the plaintiff refused to execute the contract. *Held,* that the requirement of the deposit was not a penalty, the deposit being required expressly for the purpose of liquidated damages by the terms of the proposal accepted by the defendant.

CONTRACT, against the city of Boston, for the amount of $2,000 deposited by the plaintiff in accordance with the terms required by the defendant in a bid or proposal made by the plaintiff for the building of a certain school house in Boston. Writ dated November 16, 1905.

In the Superior Court the case was heard by *Fessenden,* J., without a jury. He refused to make certain rulings requested by the plaintiff, and found for the defendant. The plaintiff alleged exceptions, raising the questions which are stated and disposed of in the opinion.

St. 1890, c. 418, referred to in the opinion, is entitled "An Act relating to officers and departments in the city of Boston." The fourth, fifth and sixth sections of that statute are as follows:

"Section 4. Every officer or board in charge of a department in said city, when authorized to erect a new building or to make structural changes therein, shall make contracts therefor, not exceeding five, each contract to be subject to the approval of the mayor; and when about to do any work or to make any purchase, the estimated cost of which amounts to or exceeds two thousand dollars, shall, unless the mayor give a written authority to do otherwise, invite proposals therefor by advertisements in not more than four daily newspapers published in said city, such advertisements to state the time and place for opening the proposals in answer to said advertisements, and reserving in such invitations the right to the officer or board to reject any or all proposals.

"Section 5. Every proposal for doing such work or making such sale shall be accompanied by a suitable bond, certified check or certificate of deposit, for the faithful performance

of such proposal, and all such proposals shall be kept by the officer or board inviting the same, and shall be open to public inspection after said proposals have been accepted or rejected.

"Section 6. All contracts made by any department of the city of Boston shall, when the amount involved is two thousand dollars or more, be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor in writing is affixed thereto. All such contracts shall be accompanied by a suitable bond or deposit of money or other security for the faithful performance of such contracts, and such bonds or other security shall be deposited with the city auditor until the contract has been carried out in all respects; and no such contract shall be altered except by a written agreement of the contractor, the sureties on his or their bond, and the officer or board making the contract, with the approval of the mayor affixed thereto."

*J. D. McLaughlin,* for the defendant.

*C. H. Frost,* (*T. F. Strange* with him,) for the plaintiff.

RUGG, J. The plaintiff in common with several others, in response to an advertisement issued by the school house commissioners of Boston, submitted a bid for the erection of a certain school house, transmitting with it a check to the order of defendant for $2,000. The city claims the right to hold this money upon these facts: The bid signed by the plaintiff contained the following provision: " The undersigned proposes and agrees that if within twenty days after the day named below for leaving the proposal, notice that this proposal will be accepted for the city shall be mailed to him at the address given below or shall be delivered to him, he will at 11 o'clock A. M. of some day of the six week days next after such mailing or delivery . . . deliver . . . a contract and bond for doing the work properly executed in the form annexed. . . . And also agrees that the certified check payable to the city left herewith is the property of the city and the amount thereof is the amount of damages which the city will sustain by failure to carry out the proposal, but if this proposal is not accepted, or if notice is mailed or delivered and the undersigned executes and delivers said contract and bond, the check or its amount is to be paid to him on receipt therefor."

The bid of the lowest bidder was accepted, but he declined to execute a contract, and the city kept his check. Thereupon, the proposal of the plaintiff, being the next lowest, was accepted by letter mailed within the time limited in the bid, and it refused to execute a contract. The proposal of the next lowest bidder was then accepted, but he refused to execute the contract, and his check was taken by the city. Between these three bids and the next lowest was a gap of about $24,000, and his proposal being accepted, he executed a contract. The plaintiff did not attempt to withdraw its proposal until after it had been accepted by the school house commission.

1. It is urged that the acceptance of one bid by the city constituted a rejection of all the other bids, and that hence the attempted acceptance of the plaintiff's bid was of no effect. Undoubtedly an advertisement and proposal might be so framed as to sustain such contention. But that is not the effect of the acts of the defendant and the statute under which they were performed. The terms of the proposal as to the time during which it was to remain open indicate that the city intended to reserve to itself time to make at least three attempts to hold bidders before its rights should have expired. St. 1890, c. 418, required the execution of a formal written contract in addition to the acceptance of the proposal. The acceptance of the bid by the school house commissioners did not of itself constitute a formal contract. The city could not be bound under the statute until the formal contract was executed. *Edge Moor Bridge Works* v. *Bristol,* 170 Mass. 528. The only way in which the city could secure a binding agreement for the construction of its building was through such a written contract. But it is plain that the statute contemplated some obligation on the part of the bidders, even though there was none on the part of the city. St. 1890, c. 418, § 5, provides that " Every proposal . . . shall be accompanied by a suitable bond, certified check or certificate of deposit, for the faithful performance of such proposal. . . ." This section must be given a reasonable effect. It would be a nullity if it should be held that the bidder was at liberty to withdraw without any liability at any time before the formal contract, which alone could bind the city, should be executed. The reasonable construction is to hold that the bidder is bound to stand

by his proposal, at least after its acceptance, and to the extent of his bond or deposit, but no further.   If the case was free from statutory regulation, and it did not appear that a more formal contract was contemplated, the mere acceptance of the proposal would constitute a contract, and neither party could refuse to carry it out without becoming liable to all the damage sustained.   *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 202 Mass. 177.   The Legislature, perhaps in recognition of the hardship, which might follow from requiring the bidder to be bound though the city was not, restricted the liability of the former to the extent of the deposit.   From this interpretation of the statute it follows that an acceptance of the proposal of one bidder did not constitute a binding contract even on the part of the bidder to execute a formal contract, but only to forfeit his deposit if he failed to do so.   The proposal stated that the bid should remain open a definite number of days, not until some one of the bids should be accepted.   The acceptance of a bid was only one step toward the execution of the contract.   The bidder first accepted might be unable to secure the required bond for the performance of the contract.   The mayor might for some just reason refuse to approve the contract, or some other cause might intervene to prevent the execution of a final contract. The tenor of the proposal, which was upon a blank furnished by the defendant, read in the light of the statute, indicates an intent that the city reserves all its rights under all the bids until a contract shall have been formally executed and delivered, and to hold all the bidders to the terms of their proposals until it has either rejected all of them as provided in St. 1890, c. 418, § 4, or become bound by the execution of a contract with one, or the time limited for acceptance has expired.   Hence the acceptance of a bid without the execution of a contract cannot be regarded as an unequivocal and definite determination on the part of the city to consider no other proposal.   So long as the time limited for the deposit to remain had not expired and no formal contract had been executed, the city was at liberty to accept any proposal, and require the bidder to respond either by signing the contract or sustaining the loss of the deposit.   *Gibson* v. *Owens,* 115 Mo. 258.

2.   It is next argued by the plaintiff that, the city's acceptance

of the bid being made subject to the approval of the mayor, there was not an unconditional acceptance of the terms of the offer. An offer must be accepted in the terms in which it is made in order to become binding, and a conditional acceptance or one that varies from the offer in any substantial respect is in effect a rejection and amounts to a new proposition. The phrase in the acceptance by the school house commissioners, which is relied on as rendering it conditional, was simply a reference to the statute under which the matter was proceeding. It was by implication a part of the invitation for proposal and also of the bid which the plaintiff had submitted. It added no new term to the proposal or to the contract. It did not vary in any respect the offer, and was therefore an unconditional and valid acceptance of it.

3. The reason for the plaintiff's refusal to sign the contract grew out of these circumstances as to the furnishing of the steel for the building: It was provided in the specifications, according to which the building was to be constructed, that "All of the steel above referred to for first, second and third floor framing, also the columns supporting same, and the columns in roof space, are included in the allowance for fire-proofing described under fire-proofing specification, but this allowance does not cover structural steel for roof, for stairs, for third story ceiling, or any work other than interior floor and column construction." Fireproofing specifications provided: "Allow the sum of $17,646 for the construction of all interior floors of the building above the basement, which shall be built and set on the Roebling System, on steel framings, as shown on plans, this price including also the steel framing for the floors and for columns supporting the same, also for columns in attic, also for properly fireproofing all this steel work in accordance with the Boston building ordinances, and also including the necessary construction to receive level ceiling in first and second story. This does not include any stair work"; and also "All floors, roofs and ceilings and metal lathing for same are to be constructed by the Roebling Construction Company, who are also to furnish and set the structural work of the floors and colums covered by the preceding allowance." The city of Boston had no contract in regard to the above with the Roebling Con-

struction Company, and the $17,646 in the specifications was the company's bid given to the city of Boston. When the plaintiff submitted its proposal, it in good faith understood and interpreted the parts of the specifications hereinbefore quoted to mean that an allowance of $17,646 was to be made for all that part of the work on the school house which was required to be performed by the Roebling Construction Company, and made only that allowance for all the work of that company, and based its bid thereon. The city of Boston interpreted the specifications to mean that the $17,646 did not include all the work to be done by the Roebling Construction Company. · After the opening of the bids but before the plaintiff declined to sign the written contract, it was informed by the Roebling Construction Company that it proposed to charge $21,000 in addition to the allowance of $17,646, for part of the work to be performed by it under the above quoted portions of the specifications. It was on account of this difference in interpretation and proposed additional charge of $21,000 that the plaintiff refused to sign the written contract with the defendant. The plaintiff stood ready at all times to sign the written contract with the defendant provided the sum of $21,000 aforesaid should be added to the amount of its bid; but this the school house commissioners refused to do.

The Superior Court found as a fact that the plaintiff interpreted these parts of the specifications to mean that the allowance of $17,646 included all the work required to be performed by the Roebling Company; that the city of Boston did not take this view, and the Roebling Company proposed to charge $21,000 in addition to the $17,646; and refused to find as requested by the plaintiff that it acted reasonably in its interpretation and to rule that there was no contract because of this failure to agree in the interpretation of the specifications. In this there was no error. The specifications were not capable of reasonable misconstruction. The allowance plainly covered only certain interior steel work, and did not include structural steel for roofs, stairs, ceilings or metal lathing, which were to be constructed by the Roebling Company, and did not include " any other work than interior floor and column construction." It is not open to argument that as matter of plain construction of language

these important and extensive elements of steel construction were outside the allowance and must be so considered by bidders. It is only when the phrase of the contract has no obvious meaning, or is reasonably capable of diverse interpretation and was in fact differently understood by the parties, that there is no agreement. There was here no mistake of fact, but simply a misconception on the part of the plaintiff of the consequences of the language used in making the proposal. Against such mistake of law the courts afford no remedy. *Ignorantia legis neminem excusat.* The erroneous interpretation of the language of the specifications was not induced by anything said or done by any agent of the defendant. This is the typical case of misunderstanding the legal effect of language used in an instrument freely signed. *Rice* v. *Dwight Manuf. Co.* 2 Cush. 80. *Taylor* v. *Buttrick,* 165 Mass. 547. *Boyden* v. *Hill,* 198 Mass. 477, 483.

4. It is next suggested by the plaintiff that there is no mutuality of obligation imposed by the acceptance of the proposal before the execution of a contract, the city not being bound thereby, and that hence there can be no obligation resting on the bidder. But as has been before pointed out, St. 1890, c. 418, in its several sections, was imported by implication into the transaction. Its terms, in conjunction with the proposal, in substance exonerated the city from any liability until the contract should be executed, but imposed a liability upon the bidders to respond to the extent of the deposit if they failed to stand by their proposal. It cannot be doubted that such a regulation of the conduct of business of municipalities is within the power of the Legislature.

5. The final contention of the plaintiff is that the deposit was a penalty, and hence cannot be enforced. The terms of the agreement indicate an intent to treat the deposit as liquidated damages, and this appears to be the purpose of the statute. The amount of the check must be regarded as liquidated damages. It was in fact much smaller than the loss sustained by the city, for by the failure of the plaintiff to take the contract it was awarded to another bidder for a sum about $24,000 larger. The plaintiff refused to sign the contract except for an additional price of $21,000. Therefore no reason appears why the intent of the parties as manifested by their written communication and

the purpose of the statute should not be carried out.  *Guerin* v. *Stacy*, 175 Mass. 595.  *Garcin* v. *Pennsylvania Furnace Co.* 186 Mass. 405.  *Morrison* v. *Richardson*, 194 Mass. 370.

*Exceptions overruled.*