JOHN J. BOWES COMPANY *vs.* INHABITANTS OF MILTON & another.

Suffolk.     January 29, 1926. — March 4, 1926.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Contract,* Construction, Performance and breach, Implied.

A committee, authorized by a town to build a schoolhouse, issued to contractors an invitation for proposals for the construction "as per plans and specifications," requiring as "security for giving the contract

and bond" a certified check which "must be left with the proposal."
Upon proposals being submitted by several, it was discovered that all
would cause an expenditure beyond the appropriation made by the
town.    Representatives of the town and the lowest bidder conferred
and certain alterations in the plans and specifications were made, which
by agreement reduced that bid to a point where, after conference with
the committee, it was accepted.    A contract in writing then was pre-
sented to the contractor for signature, but he desired to "check up on
his figures."    Later he stated that a substantial error had been dis-
covered and that he would have to increase his bid to cover that error.
He refused to sign a contract on the basis of the revised bid which the
committee had accepted.    Upon the committee's refusing to return
his certified check, he brought a suit in equity to have his proposal
declared null and void and his check returned.    The town, by a cross
bill, sought damages by reason of a breach of an alleged contract to
build the schoolhouse.    *Held*, that

(1) The plaintiff's written offer and the defendant's acceptance of
that offer, communicated to the plaintiff, constituted a binding pre-
liminary contract between the parties which was separate and distinct
from the formal contract to erect the building;

(2) A finding that the committee did not intend to bind the town
except by a formal written contract was not inconsistent with the fact
that a complete preliminary agreement was entered into between
the parties;

(3) The plaintiff was bound to the extent of his deposit upon the
acceptance of his amended proposal;

(4) There being no mutual mistake, the error of the plaintiff, if any,
was no justification for repudiation of the preliminary agreement;

(5) The plaintiff was not entitled to a return of his check, and his
bill must be dismissed;

(6) The terms of the invitation for proposals must be regarded as an
intention to treat the deposit as liquidated damages;

(7) There was no ground for the maintenance of the cross bill and it
should be dismissed.

BILL IN EQUITY, filed in the Superior Court on September
5, 1923, to have adjudged null and void a proposal, submitted
by the plaintiff to the defendant for the building of a school-
house, and to require the return to the plaintiff of a certified
check deposited with the proposal.

The defendant filed a cross bill seeking damages.    The
suit was referred to a master.    Material findings by the master
are described in the opinion.    Both parties excepted to the
report.    The suit was heard by *Morton*, J., by whose order
there were entered an interlocutory decree overruling the
exceptions and confirming the report and a final decree
granting relief to the plaintiff.    The defendants appealed.

The case was submitted on briefs.

*L. Bryant*, for defendant town.

*P. A. Hendrick*, for the plaintiff.

CROSBY, J.   This is a suit in equity brought to compel the return to the plaintiff of a certified check for $2,500, previously deposited with the defendants.   The case was referred to a master who has filed a report.   At the annual town meeting held in Milton in March, 1923, the appointment of a committee was authorized to build a school house to be known as the Tucker School.   At the meeting the town appropriated $240,000 for the purpose of constructing and furnishing the building, which sum was to be raised by an issue of bonds.

The committee employed a firm of architects, and invitations were sent to certain firms, not including the plaintiff who later asked to be allowed to submit a bid and its request was complied with.   The invitation so issued contained the following provision: "As security for giving the contract and bond, a certified check on a Boston Bank for Two Thousand Five Hundred Dollars ($2,500.00), payable to the Town of Milton, must be left with the proposal."   On April 23, 1923, the last date fixed in the invitations for the submission of bids, the plaintiff filed a written proposal with the committee in which it offered to construct the building in accordance with the plans and specifications for $201,784, and also offered to allow $2,600 for the old school house on the lot.   With the proposal the plaintiff, in accordance with the invitation, deposited a certified check for $2,500 payable to the order of the town.   The plaintiff was the lowest bidder; the next lowest bid was about $20,000 higher than that of the plaintiff.   The building committee, after opening the bids, found that the lowest bid together with the amounts required to construct and complete the building was in excess of the amount appropriated by the town.   All the bids were taken under advisement and they with the checks accompanying them were placed in the safe of the school committee.   None of the bids was accepted at that time.

It was found necessary to reduce the costs so that the expense of the building would come within the appropriation.

With that end in view the architects were instructed to make certain changes in the plans and specifications. The architects made said proposed changes, which were submitted to the plaintiff and other bidders. The plaintiff and the architect went over these changes and it was agreed by them that the allowances for them amounted to $15,164, so that by the changes in the original plans and specifications the amount of the plaintiff's bid would be reduced to $184,020.

Thereafter the plaintiff was notified by the architects there would be a meeting of the committee at the office of the architects on April 30, 1923, at 4:30 P.M.; at this meeting there were present all the members of the committee, Bowes, the president, and Kelly, the treasurer, of the plaintiff company, and various questions relating to the contract, including the time when the building should be completed were discussed. The proposed changes in the original specifications were on typewritten sheets which had been prepared by the architects and entitled "'Addenda' — 'to be considered a part of the plans and specifications of the Tucker School, Milton, Mass.'" It is found that these sheets stated accurately the changes that had been agreed upon between Hopkins, one of the architects, and Bowes at their conferences. These changes were approved by the committee.

The master found that it was the understanding of the committee and of the plaintiff that the latter had modified its original proposal and submitted an amended proposal to perform the work required by the original plans and specifications as modified by the changes in the sheets marked "Addenda" above referred to, for the sum of $184,020; that the original proposal had not been rejected, but that the proposal of the plaintiff to erect the building for $184,020 was an amendment to its original proposal and was so understood by both parties. After the preliminary conference was ended, Bowes and Kelly were requested to retire to another room while the committee conferred. The committee then voted unanimously to award the contract to the plaintiff; thereafter Bowes and Kelly returned to the room and were told that the committee had awarded the contract to the plaintiff, and Bowes appeared pleased

at the action of the committee. It was agreed that the fulfilment bond should be in the sum of $50,000.

The architects having previously prepared the contracts to be signed, all the members of the committee executed two copies thereof. It is found that "Mr. Bowes testified that he was satisfied with the terms of the contract, but Mr. Kelly did not go as far as that in his evidence." The two copies were handed by the architect to Bowes; about this time Kelly stated that he desired "to check up on his figures," he and Bowes having learned shortly before on the same day their bid was much lower than that of their nearest competitor. They took the contracts and specifications and went away. The next day they discovered an error in figuring whereby they had omitted two items in their bid aggregating $7,174. The next day Bowes notified the architect that the plaintiff had made a mistake and would have to increase its bid by $16,800, "the total of the mistakes," which would make the total sum $200,820, and that he would be unable to sign the contract. The master found that "The only inference that can be made from these facts is that the Bowes Company repudiated its proposal to build the Tucker School. It added to its figures after the mistakes in compilation had been corrected more than $9,600. I find that such action on the part of the Bowes Company is not consistent with good faith and honorable conduct."

It appears that the plaintiff made no objection to any of the terms of the contract which were fully agreed upon, other than the price, previously to the bringing of this suit.

The findings of the master show that the plaintiff's written offer and the defendant's acceptance of that offer communicated to the plaintiff constituted a binding preliminary contract between the parties.

The preliminary agreement in connection with which the check was deposited was separate and distinct from the formal contract to erect the building. If the plaintiff had signed the formal contract, the terms of the preliminary contract would have been performed by it, and it would have been entitled to the return of the check. In other words, if the plaintiff had entered into the formal contract and given

the required bond the terms of the preliminary contract would have been fully performed.

The contract as signed and tendered to the plaintiff contained all the terms on which the proposal had been submitted and had been agreed to by the parties. The changes in the specifications and included in the "Addenda" were agreed upon by the architect and the plaintiff. The master found that the original contract remained in force as a proposal modified by the consent of the parties, and that the changes in the proposal were made to meet corresponding changes in the plans and specifications, including the provision that the work should be completed in twelve months. The bond required by G. L. c. 149, § 29, to be given by the contractor is to be considered by implication as a part of the understanding of the parties even if not expressly referred to in the formal contract tendered for the erection of the building. The finding by the master, that the committee did not intend to bind the town except by a formal written contract, does not affect his finding that a completed preliminary agreement was entered into between the parties.

When the plaintiff's proposal was finally accepted as modified by mutual agreement of the parties, it could not treat the contract so made as a nullity and repudiate it by refusing to enter into a formal contract, but was bound by its proposal after acceptance, to the extent of its deposit. The rights and obligations of the parties upon this branch of the case are fully covered by *Wheaton Building & Lumber Co.* v. *Boston*, 204 Mass. 218. See also *St. Nicholas Church* v. *Kropp*, 135 Minn. 115; *Village of Morgan Park* v. *Gahan*, 136 Ill. 515; *Mayor & City Council of Baltimore* v. *J. L. Robinson Construction Co.* 123 Md. 660. Dillon, Mun. Corp. § 810.

The principal ground upon which the plaintiff contends that it is not bound by the proposal and acceptance is that the amount finally bid of $184,020 was due to a miscalculation of the sum for which it would construct the building. It is well settled that where a contract has been entered into under a mutual mistake concerning a material fact a court of equity will grant relief. It is equally well settled in this Commonwealth that a mistake of but one of the parties to a

contract is not a ground for relief either in law or equity. *Long* v. *Athol,* 196 Mass. 497. *Boyden* v. *Hill,* 198 Mass. 477. *Shapira* v. *Wildey Savings Bank,* 213 Mass. 498. *Winston* v. *Pittsfield,* 221 Mass. 356. *Cavanagh* v. *Tyson, Weare & Marshall Co.* 227 Mass. 437. *Steinmeyer* v. *Schroeppel,* 226 Ill. 9. There was no mistake on the part of the members of the committee who acted for the town; they acted in good faith without any knowledge that the plaintiff had made any mistake in the submission of its bid. The mistake was wholly its own, it was not induced in any way by the defendant or its agents. The committee accepted the bid as finally made, and had a right to assume that the plaintiff would carry out its agreement. In these circumstances the plaintiff must be held bound by its preliminary contract.

The ruling of the trial judge, that the plaintiff is entitled to have its check returned to it, for the reasons stated cannot be sustained.

The judge rightly ruled that the cross bill could not be maintained. The terms of the invitation to contractors to bid show that it was intended to treat the deposit as liquidated damages, and it must be so regarded. The plaintiff is liable only to the extent of its deposit. It follows that it is not liable for damages sustained by the town, as alleged in the cross bill, because the cost of erecting the building was a sum in excess of the plaintiff's bid.

The defendant's seventh exception to the master's report, "That the master has found that no contract was entered into between the parties," is sustained.

The final decree is reversed and a decree is to be entered dismissing the bill with costs, and dismissing the cross bill.

*Ordered accordingly.*