## UNITED STATES v. CONTI.
### No. 3640.

Circuit Court of Appeals, First Circuit.
May 2, 1941.

Edward O. Gourdin, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U.

S. Atty., of Boston, Mass., on the brief), for appellant.

Philip Bergson, of Boston, Mass. (Harry Bergson, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and HARTIGAN, District Judge.

HARTIGAN, District Judge.

This is an appeal by the United States of America from the judgment for the defendant without costs and also from the order of the court granting defendant's motion for a directed verdict, which were entered by the District Court of the United States for the District of Massachusetts on May 23, 1940.

Under date of October 10, 1933, the United States Coast Guard office of the Treasury Department invited sealed bids to furnish all labor and materials and perform all work for the construction of a two-story frame dwelling at the Coskata Coast Guard Station located in Massachusetts, in strict accordance with certain specifications, schedules, drawings and such other applicable conditions of Government Form P.W.A.-51, all of which were made part of the proposal. Schedule Form A attached provided: "Performance bond in the full amount of bid price will be required." The proposal contained this legend, "Bid security in the sum of $200 will be required". On October 24, 1933, the defendant submitted in writing his proposal to perform the stated service for the consideration of $15,495. The proposal was accompanied by a certified check in the amount of two hundred dollars bid security as required. The next lowest bidder was Samuel Pasquale who bid $16,250, and the third lowest bidder was Durso Construction Company which bid $17,839. Under date of October 27, 1933, the United States Coast Guard, by its officer, wrote its acceptance and instructed defendant to proceed with the work with the understanding that satisfactory performance bond in the full amount of bid price must be furnished before any payment could be made under any contract and that copy of the contract was following by mail. Defendant thereupon notified the Coast Guard representative at Boston of his desire to withdraw his bid because of an error in figuring.

On November 1, 1933, the defendant was notified by wire that there was no authority to allow the withdrawal. On November 7, he was informed that his refusal to perform would result in his being charged with the excess cost of having the work performed elsewhere. Defendant did not execute any formal contract nor furnish the performance bond and did not furnish any labor or material under the contract at any time. On November 2, 1933, the Coast Guard returned to Samuel Pasquale, second lowest bidder, his bid security. On December 4, 1933, the plaintiff accepted the proposal of Durso Construction Company of Lawrence, Massachusetts, dated October 23, 1933, to furnish the labor and materials and to perform all the work called for under the first agreement for the sum of $17,839. This contract was completed by Durso Construction Company and it was paid the full construction price of $17,839. On October 15, 1934, the defendant was informed that he had been charged with the excess cost in the sum of $2,344 less the $200 which had been forfeited.

Payment not having been made, the United States brought an action in contract to recover the excess cost by writ dated March 1, 1937.

At the conclusion of the government's case the trial judge granted the defendant's motion for a directed verdict and stated to the jury, "the question here involved is whether under all the circumstances the defendant stands legally bound to lose more than the $200 he was required to put up by way of 'bid security'. It has been held in Massachusetts, that under circumstances similar to those here prevailing, the defendant could not have recovered $200 he paid. But he does not seek to do so. It has also been held in Massachusetts that the effect of a provision as to bid security is to limit defendant's liability for refusal to sign the contract or to begin work, to the amount of the security furnished. This is my understanding of the effect of Bowes Co. v. Milton, 255 Mass. 228, 151 N.E. 116."

In the case of John J. Bowes Co. v. Inhabitants of Town of Milton, 255 Mass. 228, 151 N.E. 116, 117, upon which the district court based its authority for directing a verdict for the defendant, the invitation issued to firms to build a school house which the school committee of the town was authorized to build, contained the following provision:

"As security for giving the contract and bond, a certified check for two thousand five hundred dollars ($2,500.00), payable to the town of Milton, must be left with the proposal."

The John J. Bowes Co. brought a suit in equity to compel the Inhabitants of the Town of Milton and others to return to it the certified check deposited with the defendants after it refused to perform the contract which had been awarded to it to build a school for the town after the town had accepted the bid of the John J. Bowes Co. The company refused to enter into a formal written contract and failed to build the school.

The court in the Bowes case said (255 Mass. at page 232 et seq., 151 N.E. at page 118):

"The preliminary agreement in connection with which the check was deposited was separate and distinct from the formal contract to erect the building. If the plaintiff had signed the formal contract the terms of the preliminary contract would have been performed by it, and it would have been entitled to the return of the check. In other words, if the plaintiff had entered into the formal contract and given the required bond the terms of the preliminary contract would have been fully performed. * * *

"The bond required by G.L. c. 149, § 29,[1] to be given by the contractor is to be considered by implication as a part of the understanding of the parties even if not expressly referred to in the formal contract tendered for the erection of the building. * * *

"When the plaintiff's proposal was finally accepted as modified by mutual agreement of the parties it could not treat the contract so made as a nullity and repudiate it by refusing to enter into a formal contract, but was bound by its proposal after acceptance, to the extent of its deposit. The rights and obligations of the parties upon this branch of the case are fully covered by Wheaton Building [& Lumber] Co. v. Boston, 204 Mass. 218, 90 N.E. 598. See also, St. Nicholas Church v. Kropp, 135 Minn. 115, 160 N.W. 500, L.R.A.1917D, 741; Village of Morgan Park v. Gahan, 136 Ill. 515, 26 N.E. 1085; Mayor [& City Council] of Baltimore v. J. L. Robinson Construction Co., 123 Md. 660, 91 A. 682, L.R.A.1915A 225, Ann.Cas.1916C, 425; Dillon Municipal Corporation (5th Ed.) § 810. * * *

"The terms of the invitation to contractors to bid show that it was intended to treat the deposit as liquidated damages, and it must be so regarded. The plaintiff is liable only to the extent of its deposit. It follows that it is not liable for damages sustained by the town, as alleged in the cross-bill, because the cost of erecting the building was a sum in excess of the plaintiff's bid."

■ We do not think that the Bowes case is controlling in the instant case on the liability of the defendant for the damages sustained by the plaintiff as a result of the defendant's failure to perform. In that case the court's decision was based, not upon any general principles of the law of contracts, but upon an interpretation and application of Massachusetts statutes regulating the letting of contracts for the construction or repairs of public buildings or other public works on behalf of counties, cities and towns in the state. These regulations of course are not applicable to contracts for public works let by the federal government. The scope of the decision in the Bowes case is made clear by reference to an earlier case relied upon by the court, Wheaton Building & Lumber Co. v. Boston, 204 Mass. 218, 222, 223, 90 N.E. 598, 599:

"St.1890, p. 370, c. 418, required the execution of a formal written contract in addition to the acceptance of the proposal. The acceptance of the bid by the schoolhouse commissioners did not of itself constitute a formal contract. The city could

---

[1] G.L.(Ter.Ed.) c. 149, § 29. "Officers or agents who contract in behalf of any county, city, or town for the construction or repair of public buildings or other public works shall obtain sufficient security, by bond or otherwise, for payment by the contractor and sub-contractors for labor performed or furnished and materials used or employed in such construction or repair; but to obtain the benefit of such security the claimant shall file in the office of the county treasurer or of the city or town clerk a sworn statement of his claim within sixty days after the claimant ceases to perform labor or furnish labor or materials, and shall, within one year after the filing of such claim, file a petition in the superior court for the proper county to enforce his claim or intervene in a petition already filed."

not be bound under the statute until the formal contract was executed. Edge Moor Bridge Works v. Bristol, 170 Mass. 528, 49 N.E. 918. The only way in which the city could secure a binding agreement for the construction of its building was through such a written contract. But it is plain that the statute contemplated some obligation on the part of the bidders, even though there was none on the part of the city. St. 1890, c. 418, § 5, provides that 'every proposal * * * shall be accompanied by a suitable bond, certified check or certificate of deposit for the faithful performance of such proposal. * * *' This section must be given a reasonable effect. It would be a nullity if it should be held that the bidder was at liberty to withdraw without any liability at any time before the formal contract, which alone could bind the city, should be executed. The reasonable construction is to hold that the bidder is bound to stand by his proposal, at least after its acceptance, and to the extent of his bond or deposit, but no further. *If the case was free from statutory regulation, and it did not appear that a more formal contract was contemplated, the mere acceptance of the proposal would constitute a contract, and neither party could refuse to carry it out without becoming liable to all the damage sustained.* [Italics ours.] Beach & Clarridge Co. v. American Steam Gauge & Valve Manuf. Co., 202 Mass. 177, 88 N.E. 924. The Legislature, perhaps in recognition of the hardship, which might follow requiring the bidder to be bound though the city was not, restricted the liability of the former to the extent of the deposit. From this interpretation of the statute it follows that an acceptance of the proposal of one bidder did not constitute a binding contract even on the part of the bidder to execute a formal contract, but only to forfeit his deposit if he failed to do so."

In the case at bar no statutory regulation required the execution of a formal written contract. The Government reserved the right to waive the execution of such a contract, its acceptance of the defendant's bid containing the provision, "In the event execution of United States Government Form No. P.W.A. 51 is waived, the applicable provisions thereof shall nevertheless apply to this project". It is evident that the execution of a formal contract was not contemplated in the present case, because the defendant's bid was accepted on the form of acceptance printed at the bottom of the bid which states that it is "not required to be executed when United States Government Form No. P. W.A. 51 is to be executed". The bid of Mr. Conti and its acceptance by the Government constitute a bilateral contract of the same force and effect as if a formal contract had been written out and signed by the parties on P.W.A. Form No. 51. United States v. Purcell Envelope Co., 249 U.S. 313, pages 319, 320, 39 S.Ct. 300, page 302, 63 L.Ed. 620, where the court said:

"It makes no difference that the contract was not formally signed or the bond formally approved, as counsel for the government contends they should have been, both by the terms of the contract and by a statute of the United States. Act Aug. 13, 1894, c. 282, 28 Stat. 279 [6 U.S.C.A. § 6 et seq.]. Their formal execution, as we have seen, was not essential to the consummation of the contract. That was accomplished, as was decided in the Garfielde Case [Garfielde v. United States, 93 U.S. 242, 23 L.Ed. 779], by the acceptance of the bid of the Envelope Company and the entry of the order awarding the contract to it."

The phrase "bid security" used in the proposal in the case at bar did not appear in the invitation for bids nor in the statutory regulations applicable in the Bowes case. "Bid security" is not a phrase of art having a precise meaning in the law of contracts. It is a question of interpretation what the phrase means in the case at bar in the light of all the relevant data. We think the natural meaning of "bid security" is that a deposit is required of the bidder in order to assure the Government of the seriousness of the bid, the deposit to be forfeited if the bidder should withdraw his bid before the Government had accepted it. In this case the bid was outstanding and unrevoked when the Government's acceptance brought into being a binding contract. It is quite evident on the face of the contract that the parties did not intend the small sum of $200 to be regarded as liquidated damages in case the contractor should be guilty of a subsequent breach of contract. The contract called for the posting by the successful bidder of a performance bond in the full amount of the bid price. In Article 9 of Form No. P.W.A. 51 it was provided that "If the contractor refuses or fails to prosecute the work * * * the Government may take

over the work and prosecute the same to completion by contract or otherwise, *and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby.*" (Italics ours.) This became part of the contract upon acceptance of the bid because the Government's invitation for sealed bids specifically stated that they would be "subject to the applicable conditions of Government Form No. P.W.A. 51".

■ The fact that the defendant made an error in his figuring does not afford him a valid ground for withdrawing his bid. In the Bowes case, supra, the court said:

"It is well settled that where a contract has been entered into under a mutual mistake concerning a material fact a court of equity will grant relief. It is equally well settled in this commonwealth that a mistake of but one of the parties to a contract is not a ground for relief either in law or equity. [Cases cited.] There was no mistake on the part of the members of the committee who acted for the town; they acted in good faith without any knowledge that the plaintiff had made any mistake in the submission of its bid. The mistake was wholly its own; it was not induced in any way by the defendant or its agents. The committee accepted the bid as finally made, and had a right to assume that the plaintiff would carry out its agreement. In these circumstances the plaintiff must be held bound by its preliminary contract."

■ It follows that the Government's case should have been submitted to the jury, and that a new trial will be necessary. The measure of damages will be the sum by which the reasonable cost of having the work done by another contractor exceeds the defendant's contract price. A question may arise on the new trial whether the United States had not unnecessarily enhanced its damages by releasing the next lowest bidder, Pasquale, whose bid was $16,250, and awarding the contract to the third lowest bidder at $17,839. We intimate no opinion as to this question, because the present record does not adequately develop the circumstances under which Pasquale was released and his bid security returned.

■ The objections of the defendant to the photostats which were authenticated under the seal of the General Accounting Office and which the plaintiff produced at the trial are not valid.

Rule 44 of the Rules of Civil Procedure for the District Courts of The United States, 28 U.S.C.A. following section 723c, provides in part:

"An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record or by his deputy, and accompanied with a certificate that such officer has the custody. * * *"

Their allowance by the district court was proper under this rule, as well as under 28 U.S.C.A. § 661.

The judgment of the District Court is reversed and the case is remanded to that court for a new trial.