55 N.J. Super. 357 (1959)
150 A.2d 793
THE BOARD OF EDUCATION OF THE BOROUGH OF FAIR LAWN IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FAIR LAWN PLAZA TAXI, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1959.
Decided May 5, 1959.
*358 Before Judges PRICE, SULLIVAN and FOLEY.
Mr. Michael Aliotta argued the cause for defendant-appellant.
Mr. Maurice D. Emont argued the cause for plaintiff-respondent.
The opinion of the court was delivered by PRICE, S.J.A.D.
By this appeal defendant seeks to reverse a district court judgment for $989.58 entered in favor of plaintiff on December 3, 1958 amending a prior *359 judgment against defendant entered November 17, 1958 in the sum of $891.58. The case was tried without a jury.
The action was based on a claim that defendant had without right refused to enter into a contract for the transportation of pupils on one of the routes designated as Route No. 10 for the school year 1957-58 after being awarded the contract therefor as the lowest bidder following competitive bidding. The amount of the judgment was the difference between the bid of the next lowest bidder $3,266.55 and defendant's bid of $2,168.55 less $108.42, the amount of a certified check which accompanied defendant's bid. The deposit represented 5% of $2,168.55, which was the estimated school year total of the contract reflected in defendant's bid. The sum was based on a bid price of $11.85 per day for 183 school days. The next lowest bid was for $17.85 per day which, for the same number of days, reflected the aforesaid total of $3,266.55.
In response to plaintiff's advertisement for bids for the transportation of school children over various routes, plaintiff received a number of bids which were opened July 15, 1957. Defendant was the low bidder for the contract for several of the routes, one of which was for the aforesaid Route No. 10. On July 24, 1957 defendant submitted a written request to withdraw its bid for the aforesaid route. At the next regular meeting of plaintiff board on August 15, 1957 defendant's president again sought to withdraw defendant's bid for Route No. 10 and advised plaintiff that it would not enter into a contract for the transportation of pupils over the designated route. However, the board then awarded defendant the several transportation contracts on which it was the low bidder including the one for Route No. 10. On August 26, 1957 plaintiff forwarded an official notification of the awards to defendant. Defendant refused as aforesaid to sign the contract for Route No. 10. Defendant executed the contracts for the other routes.
Plaintiff retained the aforesaid deposit of $108.42 which it declared forfeited and sued defendant to recover the difference *360 between the two bids. Defendant counterclaimed for the $108.42, asserting that it was entitled thereto because of plaintiff's alleged unwarranted delay in awarding the contract. The record reveals that the trial court dismissed the counterclaim and determined initially that plaintiff, having waived the recovery of $98, the amount in excess of the $1,000 limit of the district court jurisdiction, and having retained the deposit of $108.42, was entitled to the difference between $1,000 and $108.42 or $891.58. This was the amount of the judgment entered against defendant on November 17, 1958. The amended judgment entered December 3, 1958 was based on the following order entered by the court:
"Ordered that the judgment heretofore made and entered on November 17, 1958, in the above matter, be and the same is hereby amended by changing the last two paragraphs of said judgment to read as follows:
`The difference between the defendant's bid and the next lowest bid was $1,098.00. The plaintiff has already received $108.42 as a result of the forfeiture of the deposit. The balance remaining is $989.58.
`Judgment will be entered in favor of the plaintiff and against the defendant for $989.58. The counterclaim filed by the defendant is dismissed.'"
The statute controlling the making of transportation contracts by a board of education is N.J.S.A. 18:14-11, which provides as follows:
"No contract for the transportation of children to and from school shall be made, when the amount to be paid during the school year for such transportation shall exceed $600.00, unless the board of education making such contract shall have first publicly advertised for bids therefor in a newspaper circulating in the school district once, at least 10 days prior to the date fixed for receiving proposals for such transportation and shall have awarded the contract to the lowest responsible bidder.
Each transportation bid shall be accompanied by information required on a standard form of questionnaire approved by the State Board of Education and by a cashier's or certified check for 5% of the annual amount of the contract, which deposit shall be forfeited upon the refusal of a bidder to execute a contract; otherwise, checks shall be returned when the contract is executed and a bond filed."
*361 Defendant contends that the statute makes the forfeiture of the deposit plaintiff's sole and exclusive remedy for defendant's refusal to execute the contract and, although plaintiff may retain the $108.42 subject to defendant's right of recovery asserted in its counterclaim, plaintiff may not sue defendant for damages.
In support of its criticism of the challenged judgment defendant urges that:
FIRST: It was the intention of the parties and a requirement of N.J.S.A. 18:14-11 that a formal contract be executed before "liability for performance" of the contract could attach to either party, and that the award of the contract to defendant by plaintiff following the invitation to bid amounted to nothing "more than the preliminary steps in the formation of the contract."
SECOND: The forfeiture prescribed by the statute "is equivalent to liquidated damages" and therefore bars plaintiff's action for unliquidated damages for breach of contract.
THIRD: The trial court's finding of fact that plaintiff had not delayed unreasonably in acting upon the bid and its consequent dismissal of the counterclaim was against the weight of the evidence.
Defendant's FIRST contention improperly ignores the existence of a contractual obligation which arose on the acceptance of defendant's bid. True it is that an obligation on the part of defendant to transport the pupils did not thereby arise. The contract under consideration on this appeal is separate and apart from the performance contract to which defendant refers and which would have existed had the written contract, to which the invitation to bid referred, been executed by plaintiff and defendant. The contract, which did come into existence by virtue of plaintiff's acceptance of defendant's bid, submitted in response to plaintiff's invitation, obligated defendant to enter into the school transportation contract with plaintiff. However, the invitation, the bid of defendant in response thereto, and the award constituted far more than "preliminary steps" in the *362 creation of a performance contract. They, of themselves, created a contract, separate and distinct from the contemplated performance contract. The obligation created was described in Lupfer & Remick v. Board of Chosen Freeholders of Atlantic County, 87 N.J. Eq. 491, 497 (Ch. 1917), as a vested right of contract, supported by an adequate consideration, therein described as "the privilege of bidding and the legal assurance to the successful bidder of an award as against all competitors."
Neither do we find any merit in the defendant's THIRD point above stated. We find no reason to disturb the trial court's dismissal of the counterclaim based on its finding of fact that plaintiff had not delayed unreasonably in acting upon defendant's bid. We have fully analyzed the proofs in the light of our permissible scope of review and find no reason to disturb its conclusion in that regard. R.R. 4:53-1; R.R. 1:5-4(b); R.R. 2:5. Schack v. Trimble, 48 N.J. Super. 45, 52 (App. Div. 1957); Capone v. Norton, 11 N.J. Super. 189, 193 (App. Div. 1951), affirmed 8 N.J. 54 (1951); Gagliano v. Maggio, 32 N.J. Super. 219, 225 (App. Div. 1954), certification denied 17 N.J. 57 (1954).
The crucial question on this appeal, reflected in the SECOND point above stated, is whether plaintiff is entitled to recover any sum other than the deposit of $108.42 if the determination be confirmed that defendant refused without right to sign the contract; and specifically, whether plaintiff is or is not entitled to recover the difference between the amount of defendant's bid and the amount of the bid of the next lowest bidder, less the $108.42, which net amount was the sum for which, as stated, the trial court entered judgment.
On this appeal no cases precisely like the case at bar are cited by either party. Among those cited are John J. Bowes Co. v. Inhabitants of Town of Milton, 255 Mass. 228, 151 N.E. 116 (Sup. Jud. Ct. 1926); City of New York v. Seely-Taylor Co., 149 App. Div. 98, 133 N.Y.S. 808 *363 (App. Div. 1912), affirmed 208 N.Y. 548, 101 N.E. 1098 (Ct. App. 1913); United States v. Conti, 119 F.2d 652 (1 Cir. 1941); Independent School District No. 24 v. Weinmann, 243 Minn. 469, 68 N.W.2d 248 (Sup. Ct. 1955); Wheaton Building & Lumber Co. v. City of Boston, 204 Mass. 218, 90 N.E. 598 (Sup. Jud. Ct. 1910). All of the above cases, through the medium of original complaints or counterclaims, involved claims by governmental bodies against bidders for damages following the failure of the bidders to execute contracts. A deposit or bid security was involved in each case. Recovery of damages was allowed only in Conti and Weinmann, each of which however by reason of factual differences is not controlling in the case at bar.
Plaintiff relies heavily on Conti in which the government was awarded a judgment for the difference between defendant's bid and that of the next lowest bidder. Plaintiff stresses the fact that the court therein distinguished that case from the earlier Massachusetts cases of Bowes, supra, and Wheaton, supra, in that the latter cases, restricting the liability of the bidder to the amount of the deposit, did not involve general principles of the law of contracts but the interpretation of a Massachusetts statute. The Conti case, however, is inapplicable to the case at bar because, as noted in the opinion, the execution of a formal contract could be waived by the government. The court said (119 F.2d at page 655):
"The bid of Mr. Conti and its acceptance by the Government constitute a bilateral contract of the same force and effect as if a formal contract had been written out and signed by the parties on P.W.A. Form No. 51."
The court noted that the government form contract provided that the contractor would be liable for the excess cost of completion and held that, as the invitation to bid stated that the bids would be subject to the conditions of the form contract, this became part of the contract when the bid was accepted. Contrary to the situation existing in the case at bar, the court in Conti, by virtue of the above stated facts, *364 was not dealing with a case based simply on the effect of a bid and its acceptance but was determining the measure of damages resulting from a breach of a contract of performance.
Weinmann, supra, is also inapplicable to the facts of the case at bar. There a bid bond was involved but the terms of the bond provided that if the principal did not enter into a contract, the surety would pay the difference between principal's bid and cost of completion but not in excess of the amount of the bond which was 5% of the bid. In a suit brought on the bond against principal and surety summary judgment in favor of plaintiff measured by the amount of bond was affirmed. No such situation is presented by the facts in the case at bar.
The case of Singleton v. District of Columbia, 91 U.S. App. D.C. 91, 198 F.2d 945 (D.C. Cir. 1952), cited also by plaintiff, is not in point as no deposit was therein involved.
Equally inapposite are cases relied upon in part by defendant in which either the statute or the invitation to bid denominated the deposit as liquidated damages. A case of this type cited by plaintiff is that of the City of New York v. Seely-Taylor Co., supra. In that case a bidder made a mistake in his bid. The bid had been accompanied by a deposit. The bidder refused to execute a contract and the city readvertised and sued for the difference between the defendant's bid and the next lowest bid received as the result of the readvertisement. It appeared, also, that the bidder in addition to a deposit had furnished a bond guaranteeing the completion of the contract if it were awarded to him. The court held that recovery was limited to the amount of deposit, but it is noted that the New York charter provided that in the event a bidder refused to enter into a contract of the type there involved the deposit should be retained by the city as "liquidated damages."
Plaintiff contends that the judgment herein against defendant is supported by the case of Lupfer, supra. The trial court also expressed the view that while "not exactly on all *365 fours with the present case" the Lupfer case and the case of Hillside Tp. v. Union County Sternin, 25 N.J. 317 (1957), were "controlling" in the present action. We disagree. In neither of the cited cases did the question here presented exist, i.e., is a municipality, which has retained the proceeds of a bid check which it has declared forfeited on the default of a bidder, entitled also to damages against the bidder based on the difference between the amount of the accepted bid and that of the next highest bidder less the amount of the forfeited check?
In Lupfer complainants' bid was the lowest for the building of a bridge. They refused to sign the formal contract after it had been awarded to them. The county declared that the check which complainants had deposited was forfeited. The suit was to invalidate the forfeiture and recover the money. The issue was whether delay in accepting complainant's bid and awarding the contract was the fault of the county and had been so inordinate as to render unjust the imposition of a "penalty" for failure to execute a contract. The court held that the complainants were justified in withdrawing their bid because of the county's failure promptly and decisively to accept it.
The court stated that the provision in the specifications relating to the deposit, which was therein characterized as liquidated damages in case of default, was "in the nature of a penalty," was to be construed strictly, and was "to be interpreted as working a forfeiture only if the contract was lawfully awarded and wrongfully declined." The court decreed that complainants were entitled to recover the proceeds of the deposited check. No claim for additional damages against Lupfer was made by the county, as the plaintiff asserts is its right in the case at bar against defendant. The question of the municipality's right to declare the deposited check forfeited was the only issue presented. However, in Lupfer the court, in rejecting a contention by complainants' counsel "that a successful bidder for public improvements may arbitrarily withdraw his bid at any time *366 before its acceptance and escape with his guarantee against a default," made the following statement on which plaintiff and the trial court in the case at bar respectively rely (87 N.J. Eq. at page 497):
"* * * A competitive bid submitted under statutory privilege and regulation is in the nature of an option to the municipality, based upon a valuable consideration, to which the principles of law governing options, generally, are applicable. The consideration passing is the privilege of bidding and the legal assurance to the successful bidder of an award as against all competitors. Such an option pending action consistent with its terms, expressed or implied, is a vested right of contract, of which the municipality cannot be deprived, except perhaps, by its consent, and is remediable at law by an action for damages, or enforceable in equity by specific performance, if feasible, or may be summarily dealt with by forfeiture of the penalty prescribed. To sanction any other rule would open the door to fraud, and render wholly abortive the legislative scheme for public competitive bidding."
The quoted statement is not authority for the proposition that a successful bidder, who wrongfully declined to enter into a contract awarded to him, should not only lose his deposit made pursuant to the mandate of the cited statute but be obliged to respond to the municipality in damages determined by the monetary variance between the two lowest bids with credit for the amount of the forfeited deposit.
In Hillside Tp., Union County v. Sternin, supra, plaintiff municipality sought damages by reason of defendant's failure, after his bid had been accepted, to enter into a contract for the installation of sirens. Defendant had failed to accompany his bid with a certified check for 10% of the amount thereof as required by the advertisements for bids. The requirement did not appear in the specifications, although they contained "a reference to forfeiture of the `certified check which accompanied the proposal' if the successful bidder fails to enter into the contract." Defendant contended that his bid was invalid because the deposit check did not accompany it. The municipality sought to recover the difference between Sternin's bid and that of the next lowest bidder to whom it awarded the contract. The trial court on motion granted summary judgment against Hillside holding *367 in part that no factual issue was presented "as to whether the specifications were examined by the defendant and as to whether he intended to make his proposal on the basis of them." The appellate tribunal disagreed but, because of its concurrence with the trial court's view on the aspect of the controversy concerning the deposit check, held that a reversal was not warranted.
Mr. Justice Francis, writing the majority opinion, stated that the effect of the failure of defendant to furnish the "security deposit" presented the critical issue for determination. After referring to the important public purpose served by the statutory requirement for competitive bidding, solicited through public advertisement, and the validity of the inclusion in the advertisement of the requirement for the deposit of specified security with the bid, he stressed the necessity of the equal application of the conditions to all prospective bidders to achieve a "common standard of competition." The court held that "all bids must comply with the terms imposed, and any material departure therefrom invalidates a nonconforming bid as well as any contract based upon it." It further held that "a demand in a public advertisement for the deposit of some form of security as a guaranty that the contract will be entered into if the bid is accepted, is properly imposed as an aid to the governing body in reaching its decision." The court next made the following statement (25 N.J. at page 323), which the trial court in the case at bar, as above stated, believed was controlling in the disposition of the instant case:
"* * * Moreover, the deposit is material for another reason. It is recognized that failure of the successful bidder to execute the contract results in its forfeiture, 63 C.J.S. Municipal Corporations § 1152(b), p. 828, and the specifications so provided in this case. Thus, in most instances the municipality may be made whole for any resulting loss or expense by summary action without having to sue for damages."
The above statement was construed improperly by the trial court in the case at bar as support for the proposition which plaintiff here urges also, i.e., that plaintiff may declare *368 the statutorily required deposit forfeited and in addition recover damages measured by the difference between the two lowest bids less the amount of the deposit. The above quoted declaration by the court in Hillside simply means that in a situation such as was there present a municipality has a right of action for damages and that, where a deposit has been exacted and forfeited, it will be considered as compensation for the loss sustained, which in most instances would satisfy such loss. Implicit in the contractual relationship arising from the acceptance of the bid, accompanied by the required deposit, is recognition of the fact that the parties by their contract had agreed that it would be so considered and treated. The undoubted objectives of the statutory requirement for the 5% deposit in connection with a bid for a transportation contract were precisely those set forth by the court in Hillside, in which no statutory requirement for a deposit was involved. Regardless of the basis for the deposit requirement, whether it be as the result of contract or in obedience to statutory mandate, its purposes are the same. They have been defined in Hillside as establishing and measuring "the obligation of persons who seek the contract" (25 N.J. at page 322); "a guaranty that the contract will be entered into if the bid is accepted"; as "an aid to the governing body in reaching its decision"; and (as we construe the above quoted portion of the opinion (25 N.J. at page 323)) to reimburse the municipality for its loss and expense flowing from the wrongful act of a bidder in declining to enter into a contract for the performance of the work after the contract was lawfully awarded to him.
We construe the statute (N.J.S.A. 18:14-11) to mean that when the deposited amount is legally forfeited it shall be considered as liquidated damages and there is no justification for the recovery of damages in addition thereto.
The judgment in favor of plaintiff for $989.58 is reversed. The judgment dismissing the counterclaim is affirmed. No costs.