W. F. MARTENS & Co., INC., Appellant, *v.* THE CITY OF SYRACUSE and Others, Respondents.

Fourth Department, May 1, 1918.

Municipal corporations — contract — bid for erection of school-house — error in bid entitling bidder to rescission thereof — inadvertent error of estimator — when check of bidder is not forfeited on rescission of bid — discretion of municipality to award contract to any bidder — Second Class Cities Law, section 121, construed.

Where a contractor, intending to bid on plans and specifications for the erection of a public school in a city, employed an estimator of long experience to figure on the work and the latter, who was pressed for time. in completing his work, made an error in figuring certain items so that the bid read $4,311 instead of $43,110, and the contractor, who had no knowledge of the error, immediately upon discovering the same on the opening of the bids advised the city authorities of the error and gave due notice that he recalled and canceled the same, but the city refused to accept the cancellation and notified the contractor that it would hold

him on the bid, he may maintain a suit for rescission, although the mistake was unilateral, and, under the circumstances, is entitled to a decree of rescission.

Moreover, where the city, instead of accepting the next higher bid, which it was entitled to do, readvertised the contract at a large expense and let the same at a sum in excess of the next higher bid on the first letting, it is not in equity entitled to hold the check which the plaintiff deposited as security for his bid on the theory that equity in granting the rescission must place the parties *in statu quo*, for under the circumstances the readvertisement was unnecessary.

Moreover, the plaintiff's check should not be held to be forfeited where the city had discretion to award the contract to any bidder regardless of the amount bid if the interests of the city would thus be best served.

Section 121 of the Second Class Cities Law, prohibiting the withdrawal of a bid until the awarding and execution of a contract, does not stand in the way of a rescission for, under the circumstances, the plaintiff never submitted its real bid but an erroneous one which did not express its intent.

APPEAL by the plaintiff, W. F. Martens & Co., Inc., from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Onondaga on the 21st day of September, 1917, dismissing the complaint upon the decision of the court after a trial at the Onondaga Special Term, and also from an order entered in said clerk's office on the 17th day of September, 1917, denying plaintiff's motion to vacate and set aside the decision of the court filed in said office and to resettle the same.

*William MacFarlane* and *S. J. Warren* [*Bentley & Mac-Farlane*, attorneys], for the appellant.

*Carl E. Dorr* [*Stewart F. Hancock, Corporation Counsel*], for the respondents.

MERRELL, J.:

Plaintiff, a domestic corporation, engaged in the business of general contracting and building, having its principal place of business at the city of Rochester, N. Y., brought this action to rescind, cancel and annul a certain bid made by plaintiff for the erection of a public school in the city of Syracuse, and to enjoin the defendants from declaring plaintiff in default with regard to said bid and from declaring forfeited a deposit of $9,000 made by plaintiff by certified check,

and from collecting said check, and to recover the same with lawful interest thereon. The basis of plaintiff's claim for relief is certain alleged mistakes and errors of its estimator in transcribing figures, as the result of which plaintiff's bid for the erection of said school building was some $38,799 less than it should have been, and which its estimates called for.

The circumstances are as follows: The city of Syracuse in 1916 undertook the erection of a schoolhouse in said city known as the Madison school, and through its board of contract and supply publicly advertised for bids therefor. Under such advertisement the bids were to be submitted to said board of contract and supply on December 26, 1916, at one-thirty o'clock P. M., and it was required that each bid was to be accompanied by a certified check for five per cent of the amount of the bid, to secure the execution of the contract, if awarded to the bidder.

About a week prior to the time when the bids for said work were to be submitted plaintiff's president first learned of the prospective work and at once procured a copy of the plans and specifications, which were long and carried out with great detail, and employed an estimator of twenty-five years' experience to figure upon the job. The time was short and the detail and preparation for bidding was immense, and required almost constant application of the estimator day and night, all without plaintiff's knowledge, to complete his work in time. Indeed, it appears that the estimator's figures were only completed at the final hour and were submitted without an opportunity to verify the same. Plaintiff's bid as finally submitted by its estimator consisted of three sheets containing ninety-nine different items, totaling, as figured, $179,969. On submitting its bid, plaintiff delivered to said board of contract and supply its check duly certified for $9,000, being five per cent of the amount bid. Plaintiff's estimator remained in the presence of said board on December 26, 1916, until the bids were opened and heard the first two bids read, which were from $40,000 to $70,000 higher than plaintiff's. He was at once convinced that he had made a serious blunder in his figures, and owing to the intense nervous strain under which he had worked and the consciousness of having made a mistake seems to have suffered a com-

plete mental collapse and aimlessly wandered from Syracuse to Oneida, and thence to Buffalo, and finally returned to his home at Rochester. In the late afternoon of the same day the bids were opened plaintiff's president learned from another bidder of the amounts of the bids, and became convinced that plaintiff's bid as submitted was wrong, but was unable to find his estimator or obtain access to his estimates or item sheets. Early the following morning plaintiff's president called upon members of the board of contract and supply at Syracuse, and informed them of the apparent error, and served upon said board formal written notice withdrawing plaintiff's bid. On the following morning of December twenty-eighth plaintiff's president found the estimator and procured from him the item and quantity sheets used in preparing plaintiff's bid. Upon examining the same and comparing with the bid sheets the error was at once apparent. On sheet numbered 3 of the bid submitted for plaintiff the following items appeared: "26491 sq. yards plastering 3c., .55, $1,457.00; Carpenter work, 2,854.00."

The sub-quantity sheet of carpenter work consisting of thirty-two items, totalled thereon at $28,540. It thus appeared that in transferring from the quantity to the item sheets two errors had been made: *First,* the item for carpenter work on the sub-quantity sheet figured $28,540. In transcribing the same it was entered on the item sheet at $2,854. *Second,* on the quantity sheet the plastering 26,491 square yards, three coats, at fifty-five cents per yard appeared correctly at $14,570, whereas as transcribed and included on the third sheet of plaintiff's bid it was stated at $1,457. The aggregate of these two items as bid was $4,311, whereas if correctly transcribed they would have aggregated $43,110. By such error plaintiff's bid of $179,969 was $38,799 less than it should have been. This was clearly an error, unquestionably due to the great detail of the estimate and to the haste and strain under which plaintiff's estimator was compelled to work. The limitations of the human race furnish ample excuse for the error in plaintiff's bid. It was wholly inadvertent.

There were six bids submitted, the next highest to plaintiff's being that of J. F. Grove Construction Company for

$200,000.   This bid was held by the board of contract and supply to be informal, solely by reason of the fact that instead of being accompanied by a certified check to secure the performance of the contract which might be awarded, the Grove Company furnished a bond as such security.   However, the Grove Construction Company bid was received and tabulated, and the contract could have been awarded to said bidder and the city been amply protected by said bond or by certified check which it could have required.

On December 28, 1916, at ten-thirty A. M., the day following that on which plaintiff served its notice of withdrawal of its erroneous bid, the board of contract and supply met and considered the bids and adopted a resolution in effect refusing to permit such withdrawal and accepting plaintiff's bid, notwithstanding said board had been fully informed that such bid was erroneous, and authorized its secretary to enter into a contract with plaintiff for said work upon the terms of its said bid.   On the same day plaintiff commenced this action and procured a temporary injunction restraining the city from accepting the bid or entering into a contract with plaintiff.   On January 5, 1917, said board again met and adopted a resolution declaring plaintiff's $9,000 check forfeited and rejecting all the other bids.   Thereafter the city readvertised for new bids and the contract was let to another contractor for $210,000.   Under these facts, which were undisputed, the learned trial court at Special Term, we think correctly, absolved plaintiff from any design or intention to mislead said board of contract and supply, or to gain for the plaintiff any undue or unfair advantage; that the mistakes made by plaintiff's estimator were not apparent upon the formal bid submitted.   The learned court further held that except for plaintiff's said bid the lowest bid upon the original advertisement was that of J. F. Grove Construction Company for $200,000, and that the informality in such bid could have been rectified and the bid accepted by said board.   We think such findings of the trial court amply justified by the undisputed facts.   Plaintiff's error was entirely inadvertent and the trial court we think with entire propriety held that so far as a rescission of its bid was concerned the facts presented a case for granting the relief sought.   Any other disposition would

have been inequitable. (*Hearne* v. *Marine Ins. Co.*, 87 U. S. 488, 491; *Schenectady Stove Co.* v. *Holbrook*, 101 N. Y. 45; *City of New York* v. *Seely-Taylor Co.*, 149 App. Div. 98; affd., 208 N. Y. 548; *Harper, Inc.*, v. *City of Newburgh*, 166 App. Div. 903; affd., 222 N. Y. 670; *Moffett, Hodgkins, etc., Co.* v. *Rochester*, 178 U. S. 373.)

In the *Harper, Inc.*, case (see 159 App. Div. 695) an error was discovered in a bid after the bids had been opened and plaintiff's bid had been accepted and a resolution adopted by the city council awarding the contract to plaintiff. The mistake was, as in the case at bar, inadvertent and there was no claim of mutual mistake, fraud, deceit or bad faith and the error was not apparent on the face of the bid. The court held that there could be a rescission for unilateral mistake, upon the theory that there was no contract and in the eye of the law no meeting of the minds of the parties.

While holding that plaintiff here had made out a case for rescission of its bid, the learned trial court attempted to apply the familiar maxim of equity that he who seeks equity must do equity, and held it to be the duty of a court of equity under the circumstances of this case to place the parties in *statu quo*. The court then held that except for plaintiff's erroneous bid the city could have awarded the contract to the next lowest bidder for $200,000, and that being prevented from so doing by plaintiff's bid it was required to readvertise and that the lowest bid upon such readvertisement was $210,000, at which sum the contract was let, and that thereby the city suffered damages in the sum of $10,000, more than enough to absorb plaintiff's deposit, and thereupon, upon such reasoning, directed judgment dismissing plaintiff's complaint.

We are unable to agree with the trial court in such final disposition of the case. We do not think the circumstances presented a situation justifying the application of the equitable principle stated. We are not impressed that the board of contract and supply of the city of Syracuse acted with entire fairness to the plaintiff, but rather that it sought to take advantage of plaintiff's honest mistake. Almost immediately upon the bids being opened and before it had taken any action the said board was fully advised that a mistake had

been made in plaintiff's bid, and that plaintiff desired to withdraw the same; and before any action was taken the board fully understood that such error had been inadvertent and knew that fair-dealing demanded that plaintiff should be relieved. It could have permitted plaintiff to withdraw its bid and have then awarded the contract to the Grove Construction Company, the next lowest bidder. No good reason suggests itself why a readvertisement was under the circumstances necessary. The board had ample authority to award the contract to the Grove Construction Company for $200,000. The plaintiff should not suffer by reason of the failure of the board to so act and for the added expense to the city as the result of such readvertisement. Having found that plaintiff was entitled to a rescission the court should have granted plaintiff judgment for the amount of its deposit with interest and costs. (*Harper, Inc.,* v. *City of Newburgh,* 159 App. Div. 695, 699; *North-Eastern Construction Co.* v. *Town of North Hempstead,* 121 id. 187.)

Furthermore, said board of contract and supply were not necessarily required to let the contract to the lowest bidder. It was quite within its discretion to award the contract to any bidder regardless of the amount bid if under the circumstances the interests of the city would thus be best served. Its action could only be attacked for fraud, collusion, corruption or bad faith. (*Barhite* v. *Home Telephone Co.,* 50 App. Div. 25, 30; *Davenport* v. *Walker,* 57 id. 221, 223; *Talcott* v. *City of Buffalo,* 125 N. Y. 280.)

Respondents invoke the provisions of section 121 of the Second Class Cities Law (Consol. Laws, chap. 53; Laws of 1909, chap. 55) as preventing a withdrawal of plaintiff's bid until the awarding and execution of the contract. We do not think in view of the mistake which plaintiff made that it was precluded from withdrawing its erroneous bid. In reality it never submitted its real bid, but an erroneous one not at all expressing its intent. (*Moffett, Hodgkins, etc., Co.* v. *Rochester, supra; North-Eastern Construction Co.* v. *Town of North Hempstead, supra.*)

We think plaintiff's motion for a resettlement of findings should have been granted and that the order denying the same should be reversed.

The judgment in so far as it dismisses plaintiff's complaint should be reversed and all findings in support thereof should be disapproved and in place thereof new findings should be made in accordance herewith directing judgment in plaintiff's favor for the relief demanded in the complaint, with costs.

All concurred.

Judgment and order reversed, with costs, and judgment directed for the plaintiff for the relief demanded in the complaint, with costs. Order to be settled on notice at which time proposed new findings to be made and findings to be disapproved in accordance with the opinion may be submitted.