JOSEPH BRENDESE, Plaintiff, *v.* CITY OF SCHENECTADY et al., Defendants.

Supreme Court, Trial Term, Schenectady County, June 6, 1947.

*Homer E. Peters* for plaintiff.

*Kelsie E. Mead, Corporation Counsel,* for defendants.

IMRIE, J.   Plaintiff seeks judgment declaring that his several bids submitted to defendant city October 2, 1946, for eleven different items of sanitary sewer construction and totaling somewhat over $98,000 be rescinded, cancelled and declared null and void and of no effect; also, perpetually enjoining the defendants from declaring the plaintiff in default and from declaring his certified checks deposited with his bids in the amount of $5,000 forfeit, and directing the return of said checks to the plaintiff or payment to him of a like amount.

Following public advertising for bids for the public improvements above mentioned, on October 2, 1946, various bids were submitted to the city; of these, plaintiff's were the lowest.   On

October 21, 1946, he was awarded the contract and was notified of such award by mail on October 24, 1946. He did not execute the contract or provide the required performance bond. This suit was commenced February 3, 1947.

With his bids plaintiff deposited certified checks amounting to 5% of his several bids and totaling $5,000. The notice to bidders, requiring deposits, contained the provision that, " The bidder whose bid has been accepted will be required to attend at the office of the Clerk of the Council (with the surety offered by him or them) and execute the (bond and) contract within three days from the date of the service of a notice delivered to him in person or mailed to the address given in the bid that the contract has been awarded to him. In case of failure to execute the (bond and) contract within the time stated, he or they shall be deemed to have abandoned the contract and the amount of the deposit made by him or them will be forfeited to and retained by the City of Schenectady as liquidated damages."

The aggregate of plaintiff's bids was approximately 50% of the next lowest aggregate submitted. In his complaint he alleges that, in preparing his bids, he estimated the fair and reasonable value and cost of the trench excavation at the price of $3 a cubic yard, but that through error and mistake he failed to include or take into consideration in such estimate of trench excavation the value and cost of dewatering the excavation for trenches although he did intend to take such omitted items into consideration as a part of the bid price; that such error, omission and mistake materially and substantially affected the amount of each of his bids; that in view of such error, omission and mistake, he could not furnish the labor and materials incident to the performing of the contract without great and serious loss to himself.

He was present at the opening of the bids and, becoming concerned by reason of the difference between his bids and others submitted, he forthwith checked his work sheets, then discovering the omission of the estimate for dewatering the trenches, which item, he contends, should have been an additional $3 or $3.50 per cubic yard of trench. This was on October 2, 1946.

He attempted unsuccessfully to obtain a performance bond. During the period of his efforts to do so he advised officials of the defendant of the delay incident to obtaining the bond, and that he was recasting his figures to see if he could reduce the cost to him of the work and materials involved. Until late January, 1947, there were conversations between him and city officials;

extensions of time were given to him to file his bond and enter into the contract.

From October 2, 1946, when he discovered his alleged error, he never advised any official of the defendant city that he had made an error or mistake in his said bid although he admits that within one month from the date the bids were open he had determined he could not perform the contract in question without loss to himself. He did not ask to withdraw his bids or that he be relieved therefrom upon the ground of his mistake until, on February 3, 1947, he began this action. Contemporaneously with the beginning of the action he obtained a temporary stay against any action on the part of the defendants with respect to the forfeit of his deposit checks, which stay was later continued *pendente lite*.

He now seeks the equitable relief of rescission and the return of his deposits.

Plaintiff's testimony as to the error in his bid is credible and I find that he did, in fact, make the error, omission and mistake which he alleges without any intent to defraud or overreach the defendants. Under the authorities this would entitle him to the relief of rescission for which he asks, on the theory that, by reason of this mistake on the part of plaintiff, no contract remained, " for there was in the eye of the law no meeting of the minds at all." (*Harper, Inc.*, v. *City of Newburgh,* 159 App. Div. 695, 696–697; *Moffett, Hodgkins & Clarke Co.* v. *Rochester,* 178 U. S. 373; *Martens & Co.* v. *City of Syracuse,* 183 App. Div. 622; *City of New York* v. *Dowd Lumber Co.,* 140 App. Div. 358.)

Under the circumstances disclosed in these authorities, as well as others, the courts have permitted the bidder to recover his deposit, as a matter of equity.

Defendants maintain that the circumstances in the instant case justify the retention of the plaintiff's deposits as liquidated damages, asserting that his own laches bars his recovery.

Opposing this claim plaintiff contends that, inasmuch as the defendants have failed to prove any damages resulting from his failure to enter into the contract and from his delay in advising defendants of his reason for not doing so, they are not entitled to rely solely upon laches to retain the deposits even as liquidated damages; further, that in equity it should be considered that the defendants, by reason of the discrepancies between the bids of the plaintiff and other bids submitted, must be deemed to have been charged with knowledge of the plaintiff's error. (*Moffett, Hodgkins & Clarke Co.* v. *Rochester, supra; City of New York* v. *Dowd Lumber Co., supra.*)

In these cases it will be noted that not only were the bidders' mistakes gross but there were evidences in the bids themselves of the errors. In the *Dowd* case (*supra*) some of the errors were apparent in the carrying out of totals and were first discovered by the city's representative. The errors there disclosed amounted to 90% of the proper figures. In the *Moffett* case (*supra*) there was, for instance, an error in using a basic excavation figure of $1.50 a cubic yard instead of $15 a cubic yard, again a matter of discrepancy of 90%. There was no such gross discrepancy in the figures in the instant case; nor are we entitled, in the absence of any proof on the matter, to assume that the defendants had knowledge of the inadequacy of plaintiff's figures merely by reason of the contrast between his bids and the other bids submitted.

Authorities cited by the parties do not squarely meet the issues here. Those of the plaintiff, whether they were at law for damages for breach of contract or in equity for rescission, involved circumstances where the bidders promptly made known to the other party their discovery of error, and thereby, to some degree at least, left such other party *in statu quo* so far as the latter's relations with other bidders were concerned. As to *Davin* v. *City of Syracuse* (69 Misc. 285, affd. 145 App. Div. 904) relied upon by the defendants, we may point out that it does not there appear that the failure of the successful bidder to enter into a contract to perform was due to a mistake on his part or was anything other than recalcitrance. That case, however, does turn upon an exposition of the question as to whether the terms of the deposit requirements called for a penalty or liquidated damages and whether, when established as liquidated damages, the deposit could be retained in the absence of proof by the defendant city of actual damages following plaintiff's default. It was there found that the deposit constituted liquidated damages and as to the other point (p. 292) that " from the fact of a violation of the contract, it is to be presumed that the party [defendant] sustained a loss * * * " (citing *Little* v. *Banks,* 85 N. Y. 258, 265). Further, in respect to the amount of the required deposit, which was 5% of the amount of the bid, it was said (pp. 291–292) : " It is competent for the parties to a contract to agree as to the amount of damages to be paid upon a breach, instead of leaving the amount to be ascertained by the court and jury. This agreement will not be interfered with unless the amount is ' so grossly disproportionate to the actual injury that a man would start at the mere mention of it.' *Clement* v. *Cash,* 21 N. Y. 253–256, per WRIGHT, J."

Did the deposit requirements here provide for a penalty or, as stated, for liquidated damages? The deposit called for was not grossly disproportionate or unreasonable; it was, in fact, the usual and normal requirement, percentagewise. Aside from any question about damages to the defendant city in extra costs involved in a readvertising for bids and a reletting of the contract, there are involved in the proceedings for the making of contracts for public improvements the elaboration and preparation of details and the public interest which calls for the prompt construction of works relating to sanitation. (*Davin* v. *City of Syracuse, supra*; 2 Pomeroy on Equity Jurisprudence [5th ed.], § 442g.) Notices to bidders to compete for public construction must be prepared in such a manner as to protect the city from default on the part of bidders and the expense incident thereto, and it was competent for these parties to enter into such a provision for liquidated damages in the event of default. A proper view of the whole procedure is that there were effected two different contracts. One of these was when the city advertised its notice to bidders and the bidders, accepting the offer to receive bids, did submit their bids, thus accepting and becoming bound by the offer on the part of the city. The other contract in contemplation was the contract to be entered into between the city and such person or persons as submitted a bid acceptable to the city. The result is that, while it might be found, under the authority of numerous cases, that the latter contract was subject to cancellation on the ground of mistake on the part of the bidder, the former contract remained and the deposit, under the notice to bidders, was a part of that contract. The deposit in this case must be considered as liquidated damages rather than as a penalty.

That being so, is there anything in the nature of the case which calls for the interposition of equity in granting plaintiff the payment of his deposit?

One seeking rescission in equity loses the power of avoidance for mistake or fraud if, after acquiring knowledge of the mistake or fraud, he unreasonably delays manifesting to the other party his intention to avoid the transaction. (2 Restatement, Contracts, §§ 483, 510; 9 Am. Jur., Cancellation of Instruments, § 45, p. 388; § 59, p. 399; *Grymes* v. *Sanders*, 93 U. S. 55.) " He [who seeks rescission] is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted." (*Grymes* v. *Sanders, supra,* p. 62.)

Had the plaintiff promptly notified defendants of his mistake, they would have been in a position to permit him to withdraw his

bid, or to reject and to award the contract to another bidder before they committed themselves both to him and the other bidders by the award to him. Thus, in substance, the *status quo* could have been restored by the plaintiff. " A court of equity is always reluctant to rescind, unless the parties can be put back *in statu quo*." (*Grymes* v. *Sanders, supra,* p. 62.) We have no showing here on the part of the plaintiff that such restoration could have been accomplished at the late date when he first notified defendants of his mistake by the beginning of this suit; that, for instance, the defendants had retained any measure of control over the other bidders of October 2, 1946. As a matter of common knowledge and understanding of the procedure in such instances we may safely assume that at that date the city had no other alternative than to readvertise for bids on this work with the attendant additional expense and uncertainties of cost, all of which are presumed to have been provided for in the agreed stipulation for liquidated damages.

It must be held that the plaintiff, seeking equity, has failed to do equity; that, therefore, he has failed to establish the cause of action which he sets forth. The defendants are entitled to judgment dismissing the plaintiff's complaint and declaring the city entitled to the deposited sum by way of liquidated damages.