[L. A. No. 21472. In Bank. Aug. 28, 1951.]

M. F. KEMPER CONSTRUCTION COMPANY (a Copartnership), Plaintiff and Respondent, v. THE CITY OF LOS ANGELES et al., Appellants; M. F. KEMPER et al., Cross-Defendants and Respondents.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney and James A. Doherty, Deputy City Attorney, for Appellants.

Stephen Monteleone, John M. Martin and Frank L. Martin for Respondents.

Gardiner Johnson and Thomas E. Stanton, Jr., as Amici Curiae on behalf of Respondents.

GIBSON, C. J.—M. F. Kemper Construction Company brought this action against the city of Los Angeles to cancel a bid it had submitted on public construction work and to obtain discharge of its bid bond. The city cross-complained for forfeiture of the bond and for damages. The trial court cancelled the bid, discharged the bond, and allowed appellant city nothing on its cross-complaint. The sole issue is whether the company is entitled to relief on the ground of unilateral mistake.

On July 28, 1948, the city Board of Public Works published a notice inviting bids for the construction of the general piping system for the Hyperion sewer project. Pursuant to the city charter, the notice provided that each bid must be accompanied by a certified check or surety bond for an amount not less than 10 per cent of the sum of the bid "as a guarantee that the bidder will enter into the proposed contract if it is awarded to him," and that the bond or check and the proceeds thereof "will become the property of the city of Los Angeles, if the bidder fails or refuses to execute the required contract. . . ."* The charter provides: "After bids have been opened and declared, except with the consent of the officer, board or City Council having jurisdiction over the bidding, no bid shall be withdrawn, but the same shall be subject to acceptance by the city for a period of three months. . . ." (§ 386(d).) The notice inviting bids reserved to the board the right to reject any and all bids, and both it and the official bid form stated that bidders "will not be released on account of errors."

Respondent company learned of the invitation for bids on August 17 and immediately began to prepare its proposal. Over a thousand different items were involved in the estimates. The actual computations were performed by three men, each of whom calculated the costs of different parts of the work, and in order to complete their estimates, they all worked until 2 o'clock on the morning of the day the bids

---

*Section 386(d) of the charter of the city of Los Angeles provides in part that every bid shall be accompanied by a certified check or surety bond for an amount not less than ten per cent of the aggregate sum of the bid "guaranteeing that the bidder will enter into the proposed contract if the same be awarded to him." Section 386(i) provides, "If the successful bidder fails to enter into the contract awarded him . . . within ten days after the award, then the sum posted in cash or by certified check or guaranteed by the bid bond is forfeited to the city. Such forfeiture shall not preclude recovery of any sum over and above the amount posted or guaranteed to which the city sustains damage by reason of such default or failure to contract. . . ."

were to be opened. Their final effort required the addition and transposition of the figures arrived at by each man for his portion of the work from his "work sheet" to a "final accumulation sheet" from which the total amount of the bid was taken. One item estimated on a work sheet in the amount of $301,769 was inadvertently omitted from the final accumulation sheet and was overlooked in computing the total amount of the bid. The error was caused by the fact that the men were exhausted after working long hours under pressure. When the bids were opened on August 25, it was found that respondent company's bid was $780,305 and the bids of the other three contractors were $1,049,592, $1,183,000 and $1,278,895.

The company discovered its error several hours after the bids were opened and immediately notified a member of the board of its mistake in omitting one item while preparing the final accumulation of figures for its bid. On August 27 the company explained its mistake to the board and withdrew its bid. A few days later, at the board's invitation, it submitted evidence which showed the unintentional omission of the $301,769 item. The board, however, passed a resolution accepting the erroneous bid of $780,305, and the company refused to enter into a written contract at that figure. On October 15, 1948, without readvertising, the board awarded the contract to the next lowest bidder. The city then demanded forfeiture of the Kemper Company's bond, and the company commenced the present action to cancel its bid and obtain discharge of the bond.

The trial court found that the bid had been submitted as the result of an excusable and honest mistake of a material and fundamental character, that the company had not been negligent in preparing the proposal, that it had acted promptly to notify the board of the mistake and to rescind the bid, and that the board had accepted the bid with knowledge of the error. The court further found and concluded that it would be unconscionable to require the company to perform for the amount of the bid, that no intervening rights had accrued, and that the city had suffered no damage or prejudice.

■ Once opened and declared, the company's bid was in the nature of an irrevocable option, a contract right of which the city could not be deprived without its consent unless the requirements for rescission were satisfied. (See *Conduit & Foundation Corp.* v. *Atlantic City,* 2 N.J.Super. 433 [64 A.2d 382, 384-385]; *School District of Scottsbluff* v. *Olson*

*Const. Co.*, 153 Neb. 451 [45 N.W.2d 164, 166-168] ; 5 Williston on Contracts [1937] §§ 1441, 1578.) The company seeks to enforce rescission of its bid on the ground of mistake. (See Civ. Code, § 1689.) The city contends that a party is entitled to relief on that ground only where the mistake is mutual, and it points to the fact that the mistake in the bid submitted was wholly unilateral. (See Rest., Contracts, § 503 ; Rest., Restitution, § 12; 5 Williston on Contracts [1937] § 1579.) However, the city had actual notice of the error in the estimates before it attempted to accept the bid, and knowledge by one party that the other is acting under mistake is treated as equivalent to mutual mistake for purposes of rescission. (5 Williston on Contracts [1937] § 1557, p. 4362; see, also, *School District of Scottsbluff* v. *Olson Const. Co.*, 153 Neb. 451 [45 N.W.2d 164, 166] ; Rest., Contracts, § 503, comment a, Illus. 5; Rest., Restitution, § 12, comment c; 3 Pomeroy's Equity Jurisprudence [1941] § 870a, pp. 389-390.)

Relief from mistaken bids is consistently allowed where one party knows or has reason to know of the other's error and the requirements for rescission are fulfilled. (*Moffett, Hodgkins & Clarke Co.* v. *Rochester*, 178 U.S. 373, 385, 387 [20 S.Ct. 957, 961-962, 44 L.Ed. 1108] ; *Conduit & Foundation Corp.* v. *Atlantic City*, 2 N.J.Super. 433 [64 A.2d 382, 386] ; *Geremia* v. *Boyarsky*, 107 Conn. 387 [140 A. 749] ; *R. O. Bromagin & Co.* v. *City of Bloomington*, 234 Ill. 114 [84 N.E. 700] ; *W. F. Martens & Co.* v. *City of Syracuse*, 183 App.Div. 622 [171 N.Y.Supp. 87] ; note 59 A.L.R. 809, 815-817; 80 A.L.R. 586; see *School District of Scottsbluff* v. *Olson Const. Co., supra*, 153 Neb. 451 [45 N.W.2d 164, 166] ; 5 Williston on Contracts [1937] § 1578, pp. 4410-4412; Lubell, Unilateral Palpable and Impalpable Mistake in Construction Contracts [1931] 16 Minn.L.Rev. 137, 143-147.)

Rescission may be had for mistake of fact if the mistake is material to the contract and was not the result of neglect of a legal duty, if enforcement of the contract as made would be unconscionable, and if the other party can be placed in statu quo. (See Civ. Code, §§ 1577, 3406, 3407, 1689, 1691; 3 Pomeroy's Equity Jurisprudence [1941] § 870a.) In addition, the party seeking relief must give prompt notice of his election to rescind and must restore or offer to restore to the other party everything of value which he has received under the contract. (Civ. Code, § 1691; see *McCall* v. *Superior Court*, 1 Cal.2d 527. 535-536 [36 P.2d 642.

95 A.L.R. 1019]; *Seeger* v. *Odell,* 18 Cal.2d 409, 417-418 [115 P.2d 977, 136 A.L.R. 1291].)

Omission of the $301,769 item from the company's bid was, of course, a material mistake. The city claims that the company is barred from relief because it was negligent in preparing the estimates, but even if we assume that the error was due to some carelessness, it does not follow that the company is without remedy. Civil Code section 1577, which defines mistake of fact for which relief may be allowed, describes it as one not caused by "the neglect of a legal duty" on the part of the person making the mistake. It has been recognized numerous times that not all carelessness constitutes a "neglect of legal duty" within the meaning of the section. (*Los Angeles etc. Co.* v. *New Liverpool Salt Co.,* 150 Cal. 21, 28 [87 P. 1029]; *Mills* v. *Schulba,* 95 Cal.App.2d 559, 565 [213 P.2d 408]; see *Burt* v. *Los Angeles Olive Growers Assn.,* 175 Cal. 668, 675-676 [166 P. 993]; 3 Pomeroy's Equity Jurisprudence § 856b.) On facts very similar to those in the present case, courts of other jurisdictions have stated that there was no culpable negligence and have granted relief from erroneous bids. (See *Conduit & Foundation Corp.* v. *Atlantic City,* 2 N.J.Super. 433 [64 A.2d 382]; *School District of Scottsbluff* v. *Olson Const. Co.,* 153 Neb. 451 [45 N.W.2d 164]; *Board of Regents of Murray State Normal Sch.* v. *Cole,* 209 Ky. 761 [273 S.W. 508]; *Geremia* v. *Boyarsky,* 107 Conn. 387 [140 A. 749]; *Barlow* v. *Jones,* (N.J.) 87 A. 649; *W. F. Martens & Co.* v. *City of Syracuse,* 183 App.Div. 622 [171 N.Y.Supp. 87]; *R. O. Bromagin & Co.* v. *City of Bloomington,* 234 Ill. 114 [84 N.E. 700]; *Board of School Com'rs* v. *Bender,* 36 Ind.App. 164 [72 N.E. 154]; *Moffett, Hodgkins & Clarke Co.* v. *Rochester,* 178 U.S. 373 [20 S.Ct. 957, 44 L.Ed. 1108]; see 59 A.L.R. at 818-824; cf. *Steinmeyer* v. *Schroeppel,* 226 Ill. 9 [80 N.E. 564, 117 Am.St.Rep. 224, 10 L.R.A.N.S. 114].)

 The type of error here involved is one which will sometimes occur in the conduct of reasonable and cautious businessmen, and, under all the circumstances, we cannot say as a matter of law that it constituted a neglect of legal duty such as would bar the right to equitable relief.

 The evidence clearly supports the conclusion that it would be unconscionable to hold the company to its bid at the mistaken figure. The city had knowledge before the bid was accepted that the company had made a clerical error which resulted in the omission of an item amounting to nearly one third of the amount intended to be bid, and, under all the

circumstances, it appears that it would be unjust and unfair to permit the city to take advantage of the company's mistake. There is no reason for denying relief on the ground that the city cannot be restored to status quo. It had ample time in which to award the contract without readvertising, the contract was actually awarded to the next lowest bidder, and the city will not be heard to complain that it cannot be placed in statu quo because it will not have the benefit of an inequitable bargain. (*Union & People's Nat. Bank* v. *Anderson-Campbell Co.*, 256 Mich. 674 [240 N.W. 19, 80 A.L.R. 584]; *School District of Scottsbluff* v. *Olson Const. Co.*, 153 Neb. 451 [45 N.W.2d 164, 166-167]; see 59 A.L.R. at p. 825.) Finally, the company gave notice promptly upon discovering the facts entitling it to rescind, and no offer of restoration was necessary because it had received nothing of value which it could restore. (See *Rosemead Co.* v. *Shipley Co.*, 207 Cal. 414, 420-422 [278 P. 1038].) We are satisfied that all the requirements for rescission have been met.

The city nevertheless contends that the company is precluded from relief because of the statement in the invitation and in the official bid form that bidders "will not be released on account of errors," and that this language required all contractors to warrant the accuracy of their bids and to waive all rights to seek relief for clerical mistake. There is a difference between mere mechanical or clerical errors made in tabulating or transcribing figures and errors of judgment, as, for example, underestimating the cost of labor or materials. The distinction between the two types of error is recognized in the cases allowing rescission and in the procedures provided by the state and federal governments for relieving contractors from mistakes in bids on public work. (See *School District of Scottsbluff* v. *Olson Const. Co.*, 153 Neb. 451 [45 N.W.2d 164, 166]; Cal. Gov. Code, § 14352; Federal Armed Services Procurement Regulation, 32 C.F.R. 401; Decisions B-91381, 29 Comp. Gen. 393.) Generally, relief is refused for error in judgment and allowed only for clerical or mathematical mistakes. (See cases cited in 59 A.L.R. 827-830 and 80 A.L.R. 586.) Where a person is denied relief because of an error in judgment, the agreement which is enforced is the one he intended to make, whereas if he is denied relief from a clerical error, he is forced to perform an agreement he had no intention of making. The statement in the bid form in the present case can be given effect by interpreting it as relating to errors of judgment as

distinguished from clerical mistakes. If we were to give the language the sweeping construction contended for by the city, it would mean holding that the contractor intended to assume the risk of a clerical error no matter in what circumstances it might occur or how serious it might be. Such interpretation is contrary to common sense and ordinary business understanding and would result in the loss of heretofore well-established equitable rights to relief from certain types of mistake.

The city also argues that public interest precludes any right to rescind for mistake, and in this connection it asserts that a literal interpretation should be given to the provision in section 386(d) of the charter that "After bids have been opened and declared, except with the consent of the officer, board or City Council having jurisdiction over the bidding, no bid shall be withdrawn. . . ." ▇ As we have seen, such a bid is in the nature of an irrevocable offer or option, but the offer is subject to rescission upon proper equitable grounds, and the cases recognize no distinction between public and private contracts with regard to the right of equitable relief. In *Moffett, Hodgkins & Clarke Co.* v. *Rochester*, 178 U.S. 373, 386 [20 S.Ct. 957, 961, 44 L.Ed. 1108], the city of Rochester urged that a construction of a charter provision similar to one involved here prevented a bidder from rescinding, and the court in rejecting the argument, said, ". . . If the [city is] correct in [its] contention there is absolutely no redress for a bidder for public work, no matter how aggravated or palpable his blunder. The moment his proposal is opened by the executive board he is held as in a grasp of steel. There is no remedy, no escape. If, through an error of his clerk, he has agreed to do work worth one million dollars for ten dollars, he must be held to the strict letter of his contract, while equity stands by with folded hands and sees him driven into bankruptcy. The [city's] position admits of no compromise, no exception, no middle ground." Most of the authorities from other jurisdictions heretofore cited as allowing rescission for mistake and relief from forfeiture involved public construction contracts, and in many of them there were express contract or charter provisions making the bids irrevocable. (See, also, cases collected in 59 A.L.R. 809, 824; 80 A.L.R. 586; 107 A.L.R. 1451.) The California cases uniformly refuse to apply special rules of law simply because a governmental body is a party to a contract. (See *Petrovich* v. *City of Arcadia*, 36 Cal.2d

78, 85 [222 P.2d 231] ; *Brown* v. *Town of Sebastopol,* 153 Cal. 704, 709 [96 P. 363, 19 L.R.A.N.S. 178] ; *County of Sacramento* v. *Southern Pac. Co.,* 127 Cal. 217, 222-223 [59 P. 568, 825] ; *Corporation of America* v. *Durham etc. Co.,* 50 Cal.App.2d 337, 340 [123 P.2d 81] ; *Milovich* v. *City of Los Angeles,* 42 Cal.App.2d 364 [108 P.2d 960] ; *Los Angeles Athletic Club* v. *Board of Harbor Commrs.,* 130 Cal.App. 376, 393 [20 P.2d 130] ; see, also, Civ. Code, § 1635.)

▮▮▮ There is no merit in the city's contention that, even assuming the company is entitled to cancellation of the bid and is not liable for breach of contract, the bid bond should nevertheless be enforced because the company failed to enter into a written contract. It is argued that forfeiture of the bond is provided for by charter and that equity cannot relieve from a statutory forfeiture. We do not agree however that the city charter should be construed as requiring forfeiture of bid bonds in situations where the bidder has a legal excuse for refusing to enter into a formal written contract. Under such circumstances the contingency which would give rise to a forfeiture has not occurred. (See *Rainey* v. *Quigley,* 180 Ore. 554 [178 P.2d 148, 152, 170 A.L.R. 1149].) In line with the general policy of construing against forfeiture wherever possible, decisions from other jurisdictions permitting rescission of bids uniformly excuse the contractors from similar provisions relating to forfeiture of bid bonds or deposits. (See, for example, *Moffett, Hodgkins & Clarke Co.* v. *Rochester,* 178 U.S. 373 [20 S.Ct. 957, 44 L.Ed. 1108] ; *Conduit & Foundation Corp.* v. *Atlantic City,* 2 N.J.Super. 433 [64 A.2d 382, 383, 386] ; *Union & People's Nat. Bank* v. *Anderson-Campbell Co.,* 256 Mich. 674 [240 N.W. 19, 80 A.L.R. 584] ; *School District of Scottsbluff* v. *Olson Const. Co.,* 153 Neb. 451 [45 N.W.2d 164] ; *Board of Regents of Murray State Normal Sch.* v. *Cole,* 209 Ky. 761 [273 S.W. 508] ; *W. F. Martens & Co.* v. *City of Syracuse,* 183 App.Div. 622 [171 N.Y.Supp. 87] ; *R. O. Bromagin & Co.* v. *City of Bloomington,* 234 Ill. 114 [84 N.E. 700] ; *Barlow* v. *Jones,* (N.J.) 87 A. 649 ; *Board of School Com'rs* v. *Bender,* 36 Ind.App. 164 [72 N.E. 154] ; see *Kemp* v. *United States,* 38 F.Supp. 568, 573.) The city places reliance on language in *Palo & Dodini* v. *City of Oakland,* 79 Cal.App.2d 739, 750 [180 P.2d 764], where the opinion justified the enactment and enforcement of statutory provisions for forfeiture of bid bonds. However, the court's remarks must be read in light of the fact that the bidder

there had not alleged matters entitling him to relief on the ground of mistake and had failed to comply with statutory provisions regarding relief from forfeiture. (See 79 Cal. App.2d at 746-747, 749.)

The judgment is affirmed.

Shenk, J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I dissent. The majority opinion is based upon two grounds: (1) That a bidder on a public construction job may rescind his bid for unilateral mistake after it is opened and thus escape the forfeiture provided by statute; (2) That the clause in the invitation for bids and the bid, that bidders ''will not be released on account of errors'' does not apply to clerical errors, and, therefore, is not applicable in the instant case. I do not agree with either premise.

The first violates one of the obvious and fundamental principles of the law of rescission for unilateral mistake, that is, that the one against whom rescission is sought *must have had knowledge of the mistake before a binding contract is made.* This question is glossed over in the majority opinion by a tacit assumption that the contract being rescinded is the contract for the performance of the work rather than the irrevocable and binding offer—the bid. Yet the action is one to cancel the bid—to permit its withdrawal—and throughout the opinion, the binding effect of the bid is the thing considered. For illustration it is said: ''The company seeks to enforce *rescission* of its *bid* on the ground of mistake.'' Indeed, there is no contract to perform the work, for the bidder refused to enter into it. The contract to be rescinded is a contract to make a contract to perform the work, that is, the irrevocable bid, the performance of which is guaranteed by the bid bond. At the time the bids were opened the city had no knowledge and had no means of knowing that the bidder had made a mistake. There is nothing left therefore but a naked unilateral mistake which is not ground for rescission. As it is said: ''A mistake of only one party that forms the basis on which he enters into a transaction does not of itself render the transaction voidable. . . .'' (Rest. Contracts, § 503.) If that rule is not applied to bidding contracts there is nothing left of the supposedly binding bid and forfeiture provision, for the bidder may always avoid it by claiming mistake. The proof of whether or not he has made

such a mistake is so completely within his control and power that the public body is helpless to refute it. Charter provisions, invitation for bids, and the forfeiture provisions, such as those here involved, are made wholly meaningless, for in practically every case the reason the bidder wants to withdraw is because he has made a mistake. The important considerations of public policy behind those provisions will be completely destroyed. Those considerations were well expressed in *Palo & Dodini* v. *City of Oakland,* 79 Cal.App.2d 739, 750 [180 P.2d 764] : "It would be very difficult to fix the money value of the city's loss. Among the factors involved are the following: First, of course, would be the cost of readvertising (and even this amount plaintiffs have not offered to pay) ; secondly, there would be the delay in getting a new contract; thirdly, the lower returns the city would probably receive under a new contract, now that the highest bidder has been eliminated; fourthly, the fact that possibly in view of their experience at the first bidding, the other bidders would not bid at all.

"Provisions requiring a deposit accompanying a bid for city contracts, or for forfeiture thereof, *are necessary as a matter of public policy to protect the public interests.* If, as here, a bidder were allowed without loss to himself to withdraw his bid after the bids have been publicly opened, *fraudulent practices would develop.* The body awarding contracts could agree to release a favored contractor if it turned out that his proposal was low as compared to other bids. Moreover, any bidder who found that in comparison with the other bidders, his bid was quite low, could withdraw his bid, and the city would thereby lose the value of competitive bidding and be forced to pay the prices of higher bidders with no compensation to itself for the loss sustained." (Italics added.) This court recently approved the holding of that case when it said: "*Palo & Dodini* v. *City of Oakland,* 79 Cal.App.2d 739 [180 P.2d 764], involved a provision of the Oakland City Charter requiring the deposit of a certified check with a bid and the forfeiture of the check in the event the successful bidder failed to execute the contract. It was held that, restricting the charter language to its most technical limits, as required by the established rule, *the explicit and mandatory terms called for a forfeiture and prohibited any relief therefrom.*" (Italics added.) (*Petrovich* v. *City of Arcadia,* 36 Cal.2d 78, 82 [222 P.2d 231].) Likewise,

in the instant case the policy is expressly declared by the charter that there shall be no relief from forfeiture.

The cases support the foregoing rule. (*Sanitary Dist.* v. *Ricker,* 91 F. 833; *Mayor, etc. of Baltimore* v. *Robinson Const. Co.,* 123 Md. 660 [91 A. 682, L.R.A. 1915A 225, Ann.Cas. 1916C 425]; *Bowes Co.* v. *Town of Milton,* 255 Mass. 228 [151 N.E. 116]; *Brown* v. *Levy,* 29 Tex.Civ.App. 389 [69 S.W. 255]; *United States* v. *Conti,* 119 F.2d 652; *Southbridge Roofing Co.* v. *Providence Cornice Co.,* 39 R.I. 35 [97 A. 210]; *State* v. *Scholz Bros.,* (Tex. Civ. App.) 4 S.W.2d 661.) The rule announced in the above cited cases has been thus stated: "When it is necessary for a person to make calculations or estimates, in order to determine the sum which he will bid for an offered contract, or to determine the cost to him of a proposed contract, or whether or not it will be advantageous to him to enter into it, he must assume the risk of any error or oversight in his computations, and cannot have relief in equity on the ground of mistake, if he reaches a wrong conclusion through inadvertence, misunderstanding of that which is plain on its face, or mathematical error. Thus, the negligent omission by a bidder for public work to take into consideration certain features of the work in making the estimates on which his bid was based, does not constitute a mistake which will authorize a court of equity to release him from the contract created by the acceptance of such bid. So, where plaintiff makes an offer to erect a building for a certain amount, and defendant accepts it, there is a consummated and binding agreement, although the plaintiff, in adding up the items of his estimates, makes a mistake of a very large sum, provided defendant is not in any way responsible for it. And a contract by which a company agrees to construct waterworks and furnish a municipal corporation and its inhabitants with an adequate supply of water, all to be taken from springs on certain land, will not be canceled merely because the springs prove inadequate, the mistake as to their capacity having been no more the fault of the one party than of the other. So a contractor who agrees to build a house for a specified sum is not justified in refusing to carry out his undertaking because of the error of a subcontractor in making his bid, which error induced the subcontractor to refuse to accept the work." (Black on Rescission & Cancellation, § 142.)

In addition to the foregoing, the bidder here was advised by words printed in capital letters in the invitation for bids and

also in the bid itself that *he would not be released for errors.* Nothing could be more explicit. There is no room left for claiming mistake. Yet the majority say that the ''errors'' to which reference is made in the above mentioned documents, are of judgment, not in computation. The term ''error'' has a broad meaning and is not confined to those of judgment. It means the same as mistake. To narrow its meaning is to alter the contract of the parties. The phrase was used to avoid the precise claim now made by the bidder. It was contemplated by the parties that the risk of any mistakes was to be borne by the bidder. Pertinent rules are stated: '' 'Where the parties treat upon the basis that the fact is doubtful, and the consequent risk each is to encounter is taken into consideration in the stipulations assented to, the contract will be valid, notwithstanding any mistake of one of the parties.' The rule is elaborated in 2 Pomeroy on Equity Jurisprudence, section 855, quoted in *Colton* v. *Stanford,* 82 Cal. 351, 388, 389 [23 P. 16, 16 Am.St.Rep. 137]. The cases put by Mr. Pomeroy presuppose 'an arrangement based upon uncertain or contingent events purposely as a compromise of doubtful claims arising from them, *and where parties have knowingly entered into a speculative contract or transaction*—one in which they intentionally speculated as to the result—and there is in either case an absence of bad faith, violation of confidence, misrepresentation or concealment or other inequitable conduct.' 'In such classes of agreements and transactions,' says the learned author, 'the parties are supposed to calculate the chances, and they certainly assume the risks, breach of confidence, misrepresentation, culpable concealment, or other like conduct amounting to actual or constructive fraud.' Defendant still further relies upon the rule as stated in *Ashcom* v. *Smith,* 2 Pen. & W. (Pa.) 211, [21 Am.Dec. 437], where acreage was estimated. The court said: 'Equity will indeed relieve against a plain mistake, as well as against misrepresentation and fraud. But can mistake be alleged in a matter which was considered doubtful, and treated accordingly? Where each of the parties is content to take the risk of its turning out in a particular way, chancery will certainly not relieve against the event.' '' (Italics added.) (*Taber* v. *Piedmont Heights Bldg. Co.,* 25 Cal.App. 222, 227 [143 P. 319] ; see, also, *Colton* v. *Stanford,* 82 Cal. 351, 388 [23 P. 16, 16 Am.St.Rep. 137].)

The majority opinion cites *School Dist. of Scottsbluff* v. *Olson Const. Co.,* 153 Neb. 451 [45 N.W.2d 164], but there

was no clause there like we have here. Reference is made to section 14352 of the Government Code, dealing with state contracts as excusing claimed mistakes. That provision, however, illustrates that no such excuse existed here. The Legislature felt that it was necessary to deal expressly and specifically with the subject. It provided that a bidder cannot be relieved for mistake but may bring an action for the amount forfeited (Gov. Code, § 14350), and in such action must establish that the mistake was in filling out the bid and not in judgment (*Id.*, § 14352.)

To limit the errors of the bidder for which he is responsible to those of judgment, is to strike at the very purpose of the clause in question and the bid bond. The clause and bond are there to assure certainty of contract and to preserve the integrity of the bidding system in letting public contracts. In the majority of cases that purpose will be defeated by the limitation. From the standpoint of the bidder, his mistake is far more inexcusable when it is in computation rather than judgment. There is no reason why he cannot have his arithmetic correct. School boys have been disciplined for stupidity in that field. It is entirely within his control unaffected by any extraneous uncertain factors such as are involved in judgment as to the amount of materials and labor required, complicated by the fluctuation in their value, the physical conditions encountered, etc.

Thus we have: The charter provisions requiring competitive bidding; that the bidder's bid be irrevocable and binding; and that security must be posted to assure that the bidder will execute the contract, which security will be forfeited if he does not do so. The bidding papers expressly state that the bidder will not be excused for any mistakes he makes. Nevertheless, the majority opinion holds by dubious reasoning that all of those circumstances mean nothing. The disastrous effect of the majority holding in the Petrovich case on public corporations seeking bids for public improvements, fades into insignificance by the holding of the majority in the case at bar.

I would, therefore, reverse the judgment.

Appellants' petition for a rehearing was denied September 24, 1951. Carter, J., voted for a rehearing.