[Civ. No. 9397. Fourth Dist., Div. One. Mar. 5, 1970.]

SOUTHERN CHECK EXCHANGE et al., Plaintiffs and Appellants, v. COUNTY OF SAN DIEGO et al., Defendants and Respondents.

**COUNSEL**

Mathews, Lewis, Bergen & Henderson, Classen Gramm and A. Lee Estep for Plaintiffs and Appellants.

Bertram McLees, County Counsel, McInnis, Fitzgerald & Wilkey and Laurence L. Pillsbury for Defendants and Respondents.

**OPINION**

**WHELAN, J.**—Plaintiffs Southern Check Exchange (Southern) and James W. Martin appeal from a summary judgment in favor of defendant San Diego County (County) and three of its officials.

On January 24, 1967, Southern and Martin commenced action for breach of contract to lease certain County-owned real property.

A fourth amended complaint alleged breach of contract by County and, in a second cause of action, fraudulent misrepresentation and concealment on the part of County and of three officials: T. M. Heggland (Heggland), Chief Administrative Officer, Verne O. Gehringer (Gehringer), County Purchasing Agent, and Carlton Pippin (Pippin), Gehringer's assistant in charge of property management. The defendants answered and filed a motion for summary judgment, which was granted.

## STATEMENT OF FACTS

On March 1, 1966, the San Diego County Board of Supervisors (Board) adopted a resolution declaring its intention to lease certain County-owned real property as a parking lot according to terms set forth in a document on file in the office of Board, to which reference was made for further particulars. One of the terms of the filed document was that County employees working in the courthouse be given preference for monthly daytime parking at a rate of no more than $12 per month each. The resolution called for sealed bids. Board reserved the right to reject any and all bids.

A notice calling for bids was published. Southern attempted to obtain a copy of the bid conditions; its James W. Martin (Martin) went to the office of Board on or about March 24 but was told by Gehringer a copy of the bid conditions could not be located at that time. Gehringer stated he would deliver a copy of the bid conditions to Martin the next day.

Purported bid conditions, contained in a sealed envelope, were delivered to Martin next day by Gehringer's subordinate but did not contain a provision for a preference for courthouse employees at a $12 per month rate, providing rather that any bid should state a monthly rate for such parking.

Southern submitted its bid which met the specifications of the document delivered to Martin and provided for a $13 monthly rate for courthouse employees. That was the only bid received by Board.

When the bid was opened on March 29, Board directed the lease be awarded to Southern subject to the bid's being in compliance with the bid call. When Board later discovered the bid was not in compliance with the bid conditions on file in that office, it made a formal finding to that effect and rejected all bids received in response to the bid call.

A letter from Southern to Board in June stated Southern voluntarily agreed to amend its bid to conform to the $12 per month requirement. Board had previously put out a new invitation to bid. Thereafter Southern

made a formal demand on County for damages in the amount of $41,870. The present action followed rejection of that demand.

The affidavits in support of the motion for summary judgment are uncontroverted in respect to the following matters:

The only County employee or official with whom Martin had any conversation about the proposed leasing prior to March 29, 1966, was Gehringer.

Gehringer thought that what was given to Martin as a copy of the bid conditions was a true copy of the bid conditions; the sealed envelope containing the purported copy was given to Gehringer's assistant, Pippin, who did not know what was in the envelope and did not open it, and who gave it to an employee named Weisman to deliver to Martin, to whom the envelope was given. Heggland had no knowledge of that transaction until after Southern's bid had been opened.

The only affidavit in opposition to the motion was that of Martin. It contained these statements:

"There have been depositions taken in this matter of defendants T. M. HEGGLAND, CARLTON PIPPIN and VERNE O. GEHRINGER. . . . These depositions show that there was in fact fraud and deceit imposed upon your affiant.

". . . . . . . . . . . . . .

". . . [I]t was true that VERNE O. GEHRINGER did deliver an incorrect (apparently) bid to your affiant; but your affiant has found that prior to such time there was never any monthly daytime parking for $12.00 per month."

The depositions do not contain evidence of fraud and deceit. Gehringer's deposition and copies of records show that he prepared a recommendation to Board under date of February 18, 1966, for leasing the property. That contained bid conditions of which a copy was later given to Martin; however, the bid conditions were changed before the resolution was adopted that bids be called for; and before that time the revised conditions calling for the $12 monthly rate had replaced the conditions in the original proposal made by Gehringer, and were then filed with Board on February 24, 1966 as document #370463; when Gehringer looked for a copy of the conditions to furnish Martin, quite unwittingly he took from his office file on the subject a copy of the conditions as originally written and which should have been destroyed, erroneously believing it to be a copy of the conditions referred to in Board's resolution; Gehringer had orally informed Martin of that $12 monthly rate before the copy of the supposed conditions had been given to Martin; that copy was later written upon with certain notations, including the

filling in of the offered monthly rental; against a paragraph calling for a monthly rate for County employees, the figures $12 had been placed, scored through and the figures $13 added; those notations were not in the handwriting of anyone in Gehringer's office.

The depositions also show that Pippin and Heggland had been concerned that there was only one bidder for the lease; that after comparing Southern's bid with the conditions on file they recommended its rejection and a call for new bids; that Pippin personally invited at least one other person to submit a bid pursuant to the new call for bids.

Although Martin invited the trial court to read and consider the depositions, Gehringer's testimony that he had informed Martin of the $12 monthly rate requirement has not been denied.

What in fact is suggested in Martin's affidavit is his belief that he was given a copy of the conditions as they existed when Board resolved to call for bids, and that the substitution of the new conditions was made after he had received that copy.

If the crux of Southern's grievances is not that Gehringer knowingly furnished a copy of conditions representing it to be a true copy when he knew or should have known it was not, but that the conditions were thereafter wrongfully changed by some unidentified person or persons, the only affidavit in opposition to the motion for summary judgment contains nothing in the way of competent evidence on that subject.

### QUESTION OF ESTOPPEL

The briefs on both sides discuss whether County may be estopped to deny that the supposed bid conditions furnished Southern were the true bid conditions. Southern assumes that the allegations of the fourth amended complaint may be resorted to as furnishing evidence of the elements of estoppel.

It is only by chance that Southern was the only original bidder. Had there been other bidders who had consulted the document on file in Board's office to which Board's resolution referred, and submitted bids on the basis of the conditions contained in that document, it would be clear that Southern should not have a preferred position on the basis of a claim of estoppel. We fail to see how a claim of estoppel should be more appropriate merely because Southern was the only bidder in a matter of public business to be accomplished on the basis of bids to meet certain specifications discoverable from an identified public record referred to in the invitation to bid.

Concerning bidding on a proposal for public works: "It is a general rule that the bid of one proposing to contract for the doing of a public work must

substantially conform to the specifications in the proposal." (65 A.L.R. p. 836.)

■ Where public bids have been invited for a contract with a public agency on the basis of specifications contained in an identified public record referred to in the invitation to bid and open to inspection by all bidders, no principle of estoppel comes into play in favor of a bidder whose bid has been rejected because the bidder has received erroneous information as to such specifications from some public employee of the public agency.

Any different rule would be unfair to other prospective bidders and would permit the evasion of bidding requirements, the elimination of competition, and in effect the fixing of the conditions by an employee rather than by the agency.

We are not concerned with the rights of one who because of such misinformation has submitted a bid that has been accepted, and who would be damaged as the result of such misinformation. (See cases collected in 16 A.L.R. 1131.) Nor are we dealing with a person whose own error has led him into a contract from which he asks to be relieved, as in *M. F. Kemper Constr. Co.* v. *City of Los Angeles,* 37 Cal.2d 696 [235 P.2d 7].)

■ It is further true that Southern has not shown it took any action to its detriment as the result of the misinformation. No triable issue of fact having been presented, the granting of the motion was proper.

Judgment affirmed.

Brown (Gerald), P. J., and Ault, J., concurred.