11 N.J. Super. 189 (1951)
78 A.2d 126
MARY CAPONE, ADMINISTRATRIX, ETC., PLAINTIFF-RESPONDENT,
v.
HENRY K. NORTON, TRUSTEE, ETC., DEFENDANT-APPELLANT. PETER PANEPINTO, ADMINISTRATOR, ETC., PLAINTIFF-RESPONDENT,
v.
HENRY K. NORTON, TRUSTEE, ETC., DEFENDANT-APPELLANT. RIDGEWOOD CLEANERS, INC., PLAINTIFF-RESPONDENT,
v.
HENRY K. NORTON, TRUSTEE, ETC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1950.
Decided January 4, 1951.
*191 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Louis Santorf argued the cause for the respondents (Mr. John A. Masiello, attorney for Mary Capone; Mr. August A. Azzolino, of counsel, and Mr. Benjamin P. Galanti, attorney, for Peter Panepinto).
Mr. Harry Nadell argued the cause for the respondent Ridgewood Cleaners, Inc. (Messrs. Cole, Morrill & Nadell, attorneys).
Mr. Charles S. Barrett, Jr., argued the cause for the appellant (Messrs. Lum, Fairlie & Foster, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
In these cases, which spring from a fatal grade crossing accident, the principal question is whether the amount of damages fixed by the trial judge was excessive. Two other questions were also argued and these we will consider first.
One action was begun January 25, 1949, and the other the following day. Within ten days thereafter and before even *192 filing an answer, the defendant served interrogatories (presumably by leave of court, for no objection was made), asking each administrator to "Furnish the names and addresses of any and all witnesses to the said accident." One administrator answered February 18. "I personally do not know the names and addresses of any witnesses to the said accident." The other administrator answered March 7, 1949. "The only witness to the accident that deponent knows of is Louis Friedman, Esq., of 64 Hamilton Street, Paterson, N.J."
A year later  at the end of February 1950  the cases, consolidated, came to trial. The plaintiffs presented an eyewitness, Miss Elizabeth J. Barker, and the defendant promptly objected because her name had not been given in response to the interrogatories. Evtush v. Hudson Bus, etc., Co., 10 N.J. Super. 45 (App. Div. Nov. 1950). Not from cross-examination or otherwise did it appear that the plaintiffs, their attorneys, or anyone acting for them, had the name of the witness when the interrogatories were answered. The defendant-appellant argues that it was the plaintiffs' duty, on learning of the existence of this witness, to furnish his name to defendant. Before September 15, 1948, when our present rules became effective, one party could not call upon another for the names of witnesses. Whatever duty in the premises lay upon the plaintiffs, was created by the rules. Rule 3:33, by reference to Rule 3:26-2, permits inquiry as to the "identity and location of persons having knowledge of relevant facts." The answer to the query must be served within 15 days. Rule 3:33. It is entirely clear that no information obtained by a party after the time for answering has expired, need be given. The trial court correctly overruled defendant's objection. We add that the defendant, if he had thought to do so when the day of trial approached, might have renewed his inquiry for the names of witnesses. Or he might have brought up the subject at pretrial conference.
Shortly after the trial, the defendant moved for a new trial on certain facts which defendant had just learned: During the trial, one of the jurors had divulged to his fellows that he had passed the scene of the accident only 15 minutes *193 after the accident had occurred. The court properly denied the application for a new trial. There was no charge of misconduct by the juror. When he walked or drove along Broadway in Paterson in June, 1948, he could not have foreseen his jury service a year and a half later. And the juror did not witness anything that might have thrown light on any issue. Indeed, nearly the only issue that went to the question of liability was whether the crossing gates were down or not, when the automobile carrying plaintiffs' intestates was driven onto the crossing. The juryman arrived on the scene much too late to have any knowledge on that score.
We now come to the assessment of damages. The jury appraised the pecuniary injuries of the next of kin of Harry Capone at $28,200, and of the kin of Miss Panepinto at $42,000. On motion for a new trial, the court found these figures excessive but instead of ordering new trials, gave the plaintiffs an option of taking judgments for $24,000 and $34,000. The plaintiffs elected to enter judgments in the reduced amounts. A verdict of a jury in a tort action is never disturbed on the ground that it is excessive, except in an entirely clear case. Salvato v. N.J. Asphalt, etc., Co., 135 N.J.L. 185 (E. & A. 1947). It is still the general rule that a verdict will not be set aside as against the weight of evidence, unless the verdict appears to be the product of passion, prejudice or mistake. Stephens v. Public Service Coord. Transport, 5 N.J. Super. 128 (App. Div. 1949); Vadurro v. Yellow Cab Co., 8 N.J. Super. 208 (App. Div. 1950). The finding of a fact by the trial judge, when reviewed pursuant to Rules 1:2-20 and 4:2-6, has not as great force as a jury's verdict. The rules remind us that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Beyond that, every intendment is in favor of the judgment under review, and we should not disturb the court's finding of fact unless we are well satisfied that the finding is a mistaken one. McGowan v. Peter Doelger Brewing Co., 10 N.J. Super. 276 (App. Div. Nov. 1950). But respect for the trial court imposes no restraint on our power fully to analyze the proofs and thereby arrive at a conclusion *194 whether the finding is consistent with the evidence. Lehmann v. Lehmann, 7 N.J. Super. 232 (App. Div. 1950). In the instant case, the verdict of the jury has already been set aside as to the amount of damages and what we are reviewing is the finding of the judge. But since both judge and jury found that the pecuniary injuries to the next of kin equalled or exceeded the amounts stated in the judgments, the finding of the trial judge may be accorded even greater deference than ordinarily.
One of the decedents, Harry Capone, unmarried, 27 years old, lived with his father, age 70 or 71 at the time of trial, and his mother, age 66. He had also 11 brothers and sisters, but no attempt was made to show that any of them suffered a pecuniary injury from his death. For the last two years of his life, he was a partner in a business known as the Ridgewood Cleaners. His father was employed in a dye shop, and earned sometimes $54 a week. But other times he earned much less, working only two or three days a week. Mrs. Capone testified that her son paid $50 a month on a mortgage upon his parents' home; that "He paid the gas; he paid the tax; he paid everything." He kept the house in repair. And in addition, he handed over to his mother $25 a week. That is all the information we have as to the pecuniary loss sustained in his demise. There was a likelihood that had the son lived, he would marry within a few years and establish a home of his own. On the other hand was the probability that his father would be less able to work as time went on and, with his mother, would need more help. And the son's capacity to help might increase.
The other decedent was Jean Panepinto, an unmarried woman, 27 years of age, who also lived with her parents. Her father was age 53 and her mother 50 at the time of trial. Her mother owned a little beauty shop that Jean ran, aided to some extent by a younger sister. Her father, who was the only witness on the subject of damages, testified that he himself "had been working right along;" but how much he earned he did not divulge. He sought, however, to convey the impression that he was in prosperous circumstances. He said *195 that his deceased daughter paid her parents "sometimes $50, sometimes $65, sometimes $45" a week, depending on how the business was. "She would strike an average of $60." How much of this represented a return on the mother's investment, does not appear. Jean kept books of account in connection with the business, but the witness did not produce them and had not looked into them himself. Our only other information as to pecuniary loss is that Jean helped her mother do the housework. Since it is patent that the plaintiff  the father as administrator  could readily have presented more exact evidence as to pecuniary injury than he did, few inferences can be drawn in his favor.
We need hardly say that nothing can be included in the damages for the grief of the parents or loss of companionship; only the pecuniary injury can be considered. Cooper v. Shore Electric Co., 63 N.J.L. 558 (E. & A. 1899); McStay v. Przychocki, 10 N.J. Super. 455 (App. Div. Dec. 1950).
In each case we have made what we consider a liberal forecast of the average yearly value or amount of decedent's services and payments to his or her parents. And from that we have deducted a reasonable sum as the cost of board and lodging and, in one case, a return to Mrs. Panepinto, as owner of the shop. Consider the balance as an annuity and calculate its present value. Mr. Panepinto, as administrator, has already been paid on account $3,000 by a joint tortfeasor and must give credit for that sum. In our opinion, the assessment of damages by the trial court, $24,000 in the one case, and $34,000 in the other, cannot be sustained on such an analysis or on any reasonable hypothesis suggested by counsel.
We are satisfied that the findings as to damages must be set aside. We make no assessment ourselves, since it seems better to have new trials on the amount of damages so that more evidence on the subject may be presented. Appellant argues that the amounts awarded by the jury were so grossly excessive as to indicate a partiality that vitiates the whole verdict, including the finding of liability. But we would say that the size of the verdict indicates a mistake as to the nature of the award, or else indignation aroused by what the jury *196 considered was clear proof that the negligence of defendant's servants had caused the fatal accident. Considering the evidence relating to liability separately, it amply supports the jury's finding on that issue.
The judgment in favor of Ridgewood Cleaners, Inc., owner of the automobile that was demolished, will be affirmed with costs. The Capone and Panepinto judgments will be reversed without costs to either party, and new trials directed on the issue of damages only.