32 N.J. Super. 219 (1954)
108 A.2d 185
PHILOMENA MAGGIO GAGLIANO, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
ROSE MAGGIO, ALSO KNOWN AS ROSINA OMAGGIO, DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND GEORGE H. CALLAHAN, SUBSTITUTED ADMINISTRATOR OF THE ESTATE OF DOMENICO MAGGIO, ALSO KNOWN AS DOMENICO OMAGGIO, DECEASED, INTERVENOR-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1954.
Decided September 30, 1954.
*221 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Frank B. Bozza appears of record as attorney for plaintiff-respondent and intervenor-respondent and cross-appellant.
Mr. William Krueger argued the cause for defendant-appellant and cross-respondent (Messrs. Parnell & Krueger, attorneys; Mr. Joseph Coult, of counsel).
The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
Appeal and cross-appeal are taken from a judgment of the Chancery Division on an action brought against defendant widow, Rose Maggio, to have her declared a trustee of certain assets in her possession at the time of her husband's death, alleging that the assets belonged to her husband and for an accounting. *222 Defendant Rose Maggio appeals from so much of the judgment as requires her to turn over and to account certain assets to the intervenor-administrator. Plaintiff and administrator cross-appeal from the part of the judgment as determines that any of the personal property is the property of defendant Rose Maggio, and from the denial of a counsel fee. Part of the judgment refers to certain real estate, and as to that part of the judgment no appeal is taken.
Our examination of the record indicates that statements contained in the trial judge's fact findings which are part of the judgment are comprehensive and we quote from parts of them at length. The trial court stated:
"The within cause was heard and tried on November 9th, 1953 and continued to November 12th, 1953, with the Armistice holiday intervening, on testimony taken and documentary proof offered and admitted in evidence.
The parties stipulated in the pretrial order and admitted at the trial that: (a) the plaintiff is the sole child of the decedent and the defendant, the surviving widow; (b) the deceased died intestate on February 5th, 1950, in Newark, New Jersey; (c) where all the property in question exists; (d) decedent and defendant operated together a fruit and vegetable business at 98-98-1/2 Seventh Avenue, Newark, New Jersey, for many years; (e) that defendant widow did not apply for letters of administration, claiming that her husband left an estate less than required for administration; and (f) that the court ruled, on defendant's motion to dismiss the action, that an administrator be appointed and permitted to intervene in the action, as party plaintiff.
It is admitted and appears of record that George H. Callahan, Esquire, was appointed and intervened, as substituted administrator, in substitution for Alfred C. Clapp, former administrator, who, on his own motion and consent order, was relieved of his duties because of his appointment to the judiciary.
The plaintiff proved, through herself and witnesses, that her father, at the time of his death, left personal articles consisting of jewelry, automobile, hunting dogs and equipment; plaintiff further claimed and supported by testimony and documentary proof the existence of three joint bank accounts in the total sum of $30,000, at the time of her father's death, in depositories, as follows: $10,000 in the joint names of decedent and defendant widow, in each of three Newark banks: (1) the Federal Trust Company, (2) the Fidelity Union Trust Company in the North Ward Branch, and (3) the United States Trust Company, in the branch formerly known as the Columbus Trust Company; that the first-named account in the Federal Trust Company was originally opened and always remained as a *223 joint account between the said co-depositors; that the other two accounts in the respective banks named were originally opened in the name of the defendant but before decedent's death were converted into joint accounts.
Regarding the said joint accounts, it was admitted and proved that the money deposited therein was derived from the jointly operated fruit and vegetable business, in which no books were in existence and the accounts loosely handled; in addition, there was evidence that the decedent carried on his person and kept in his home large sums of money derived from and used in his separate dealings, as a commission merchant and occasionally as a bondsman for friends, putting up cash recognizance; that the decedent made all the deposits in the stated bank accounts both before and after they all became joint accounts, as specified; which was admitted by the defendant. There is proof that on several occasions the deceased boasted and claimed that the funds in these joint accounts were his and that he asserted ownership, management and control over these joint accounts, permitting no withdrawals from them except the interest, as it accrued from time to time, over the years, since their inception as joint accounts. The bank records show that $15,000 were deposited in two joint accounts within 24 hours, by deposits of $5,000 each, in the Federal Trust Company and the Fidelity-Union Trust Company, respectively, on January 8, 1947 and January 9, 1947; and, that $5,000 was deposited in the United States Trust Company, Columbus Branch, 27 days before death of decedent, when said account before that time stood in the name of Rosina Omaggio became a joint account with the defendant and decedent becoming the co-depositors thereon. Whereby $30,000 on deposit in these joint accounts, at the time of decedent's death, reached that total by four deposits of $5,000 each in the sum of $20,000.
There was proof that defendant had in her possession, at decedent's death, the cash sum of $7,500.00, on hand and undeposited; this money was counted at the home of the plaintiff, in the presence of members of her family and in the presence of the defendant, upon her alleged assertion that it was money belonging to the decedent. This was denied by the defendant, who claimed that she brought the money there for safe keeping and that it was counted at plaintiff's volition, and that this was money she saved from the proceeds of the fruit and vegetable business, a little at a time over a period of approximately seven years.

* * * * * * * *
The defendant took into possession and deposited into her own account all the money on deposit in each of the three joint accounts in the respective banks mentioned. This was done by installment, half on one day, in the presence of the plaintiff, stating that she was taking out her own half and was leaving the other half in the joint accounts for plaintiff; the other half on a later day, after making a will partially in favor of the plaintiff. In her affidavit attached to the report and appraisal filed with the State Inheritance Tax *224 Bureau, the defendant averred that half of the money in the joint bank accounts belonged to her as proceeds from the fruit and vegetable business, operated together with her husband; and that only the remaining half was taxable, as an asset of inheritance. The rebuttable presumption that the funds on deposit in a joint account becomes the property of the survivor, has been overcome by clear and convincing proof that decedent asserted ownership, dominion and control over the joint accounts; did not permit any withdrawals therefrom since their inception as joint accounts, except interest as it accrued through the years from time to time; that he did not intend any gift in praesenti, nor make any gift causa mortis to be possessed and enjoyed in the event of survival, nor was any gift inter vivos made or intended; lacking the legal elements of such gifts and the property being testamentary in character would at all events in this case be void, since the decedent died intestate, without a will. That the bank making even mandatory payment of the funds in a joint account to the survivor, merely is saved from liability since the style and form of a joint account does not determine the relative rights of the co-depositors inter se."
The court also stated:
"There was further proof of a balance of $3,015, at decedent's death, in an account in the Carteret Savings and Loan Association of Newark, for 25 paid-up shares of stock, standing in the name of the defendant since its inception, which plaintiff claimed belonged to her father by virtue of an oral trust agreement between him and defendant, that the money belonged to him and was for his use and benefit. The testimony fell short of convincing proof that the said cash on hand and the balance of the Carteret account was the property of the deceased; the defendant proved to my satisfaction that these funds represented savings by her, through the years and therefore belong to her."
The trial court also concluded that
"on the basis of the oral and documentary proof before it, * * * the specified personal articles aforesaid and the sum of $15,000, representing one-half of the total amount of the joint accounts, is property left by the decedent at the time of his death and therefore belongs to the estate."
All appellants urge us to make new and amended findings on the ground that the denials by the trial court of the relief sought are inconsistent with substantial justice. R.R. 1:1-8 (R.R. 1:27A effective September 8, 1954); *225 R.R. 2:1-11 (deleted effective September 8, 1954; see R.R. 1:27A); R.R. 1:5-3(a)(b)(c); R.R. 2:5.
R.R. 1:5-3(a) provides in part:
"On a review of any cause involving issues of fact not determined by the verdict of a jury, new or amended findings of fact may be made, but due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." (Italics added.)
This court has said:
"Beyond that, every intendment is in favor of the judgment under review, and we should not disturb the court's finding of fact unless we are well satisfied that the finding is a mistaken one. * * * But respect for the trial court imposes no restraint on our power fully to analyze the proofs and thereby arrive at a conclusion whether the finding is consistent with the evidence." Capone v. Norton, 11 N.J. Super. 189, 193-194 (App. Div. 1951), affirmed 8 N.J. 54 (1951); Donnelly v. Donnelly, 13 N.J. Super. 436, 438 (App. Div. 1951); 5 C.J.S., Appeal & Error, § 1533.
Although we have the power to make new or amended findings of fact, "its exercise is permissive in our sound discretion where required to do justice in the particular case." Midler v. Heinowitz, 10 N.J. 123, 128 (1952).
Under our review of the evidence, we discuss the several issues on appeal.

I
With reference to the presumption that funds on deposit in a joint bank account become the property of the survivor, Chief Justice Vanderbilt for the Supreme Court stated:
"Finally, the appellants argue that even if the money deposited in the bank account originally belonged to Mrs. Perrone, a conclusive presumption of joint tenancy in favor of the husband as the survivor is raised by R.S. 17:9A-218 (P.L. 1948, c. 67, p. 352, § 218): `When a deposit has been or shall be made with a banking institution in the names of two persons, payable to either, or payable to either or to the survivor, any moneys to the credit of the account may be paid to either of said persons during the lives of both and, in case of the death of either of said persons, the moneys to the credit of the account shall, unless otherwise provided in the deposit contract, *226 be paid to the survivor, and the legal representative of the one dying shall have no right thereto notwithstanding that such moneys or any part thereof may have been the property of the one dying. Nothing in this section shall impair the rights, if any, of creditors of either depositor.' This statute was preceded by R.S. 17:9-5, which was substantially similar except that it related to banks and trust companies rather than banking institutions generally and R.S. 17:9-5.1 which dealt with deposits in savings banks and differed in substance from R.S. 17:9A-218 only in providing that payment may be made rather than shall be made to the survivor. These statutes were before the Court of Errors and Appeals in Stiles v. Newschwander, 140 N.J. Eq. 591, 594 (E. & A. 1947), where it was held: `Neither R.S. 17:9-5 nor 17:9-5.1 gives rise to a conclusive presumption of a gift of a present beneficial interest in the deposit, with the right of survivorship that is an incident of a joint tenancy, where words of joint tenancy or joint ownership are used in the creation of the account. The section first cited lays down a rule of evidence rather than of substantive law. Words of joint tenancy or of common ownership merely constitute presumptive evidence of an interest by survivorship which stands until overthrown by proof contra. And the second section, applying to savings banks, has reference only to the protection of the bank in the payment of the fund to either of the co-depositors, even though the other be dead.' This reasoning is equally applicable to R.S. 17:9A-218 and disposes of the appellants' contention that the presumption raised by the statute is conclusive." In re Perrone, 5 N.J. 514, 526-527 (1950).
The testimony in this case readily sustains the trial court's findings that the sum of $15,000, one-half the total bank deposits, was property left by decedent and belonged to the estate. The court had before it defendant-widow's own supplemental affidavit filed with the New Jersey Transfer Inheritance Tax Bureau in which she stated:
"Deponent further says that the sum of $5,000 is claimed by her on each account as her share on deposit in the three banks listed in the Inheritance Tax Return, as evidenced by letters of the banking institutions, hereto attached and made a part hereof.

* * * * * * * *
Deponent further says that the State of New Jersey, Department of the Treasury, Transfer Inheritance Tax Bureau is entitled to an inheritance tax of $15,000 less $5,000 that she is entitled to inherit tax free plus the cost of the funeral bill of $2,636.50, leaving a taxable estate of $7,374.50."
In addition there were statements allegedly made by this defendant that defendant told plaintiff that one-half the *227 monies in the joint accounts belonged to plaintiff and that the funds deposited resulted from the joint efforts of herself and her husband. Defendant was quoted as advising plaintiff to permit plaintiff's son to be adopted by defendant and decedent, since decedent had a great deal of money, implying that if plaintiff did so, decedent would leave his money to the son. Additionally, defendant admitted that decedent physically made the deposits and withdrawals of interest on the bank accounts.
The trial court was justified in concluding that the funds were products of defendant's and decedent's joint ventures and that they were jointly owned. Moreover the record sustains the trial court's finding that:
"The rebuttable presumption that the funds on deposit in a joint account becomes the property of the survivor, has been overcome by clear and convincing proof that decedent asserted ownership, dominion and control over the joint accounts; did not permit any withdrawals therefrom since their inception as joint accounts, except interest as it accrued through the years from time to time; that he did not intend any gift in praesenti, nor make any gift causa mortis to be possessed and enjoyed in the event of survival, nor was any gift inter vivos made or intended; lacking the legal elements of such gifts and the property being testamentary in character would at all events in this case be void, since the decedent died intestate, without a will."
In Stiles v. Newschwander, 140 N.J. Eq. 591, 594 (E. & A. 1947), Mr. Justice Heher stated:
"Intention is a matter of fact, not of formula. The form of the account may raise a rebuttable presumption either of a joint tenancy or of common ownership, indicating an intention to transfer a present beneficial interest to the donee, but it is not a substitute for the intention itself. If there was in fact no intention to transfer an interest in praesenti, there was not a gift inter vivos. If, in the absence of evidence contra, the presumptive inference of an intention to make a gift presently effective is drawn from the frame of the deposit, it is one thing; but where the evidence affirmatively shows a contrary intention or no intention at all, one of the essential requisites of a gift inter vivos is wanting." (Italics added.)
The form of the bank accounts are but prima facie evidence of an intention to make a gift in praesenti; and we agree *228 with the trial court that the presumption has been rebutted by the proofs in that there was no donative intent.

II
With reference to the balance of $3,015 in an account in the Carteret Savings & Loan Association of Newark for 25 paid-up shares of stock, we agree with the trial court's finding that plaintiff failed to supply "convincing proof" of an oral trust agreement between defendant and her husband by which defendant held the account in trust for her husband. We can find no credible evidence let alone convincing evidence of such a trust agreement.

III
The finding of the trial court that defendant was the sole owner of the $7,500 in cash in the possession of defendant at time of husband's death is sustainable by the record.
Defendant testified that she saved this sum over a period of years and that the funds were solely hers. Although her husband knew of the $7,500 and although defendant said she would have given the money to her husband had he asked her for it, defendant at all times had physical possession of the $7,500 on her person or in the house. Defendant admitted she brought the money to her stepdaughter, the plaintiff, the night of her husband's death and gave it to plaintiff for safekeeping, fearing that it would be stolen. Defendant denied that on that occasion she had said to plaintiff: "This is what your father left."
Conflicting testimony on this issue was submitted to the trial court. He saw the witnesses, heard their testimony, determined their credibility and made his findings. Although we might have made contrary determinations had we heard the witnesses, we cannot state that on the record before us "the finding is a mistaken one." Capone v. Norton, supra (11 N.J. Super. 189).

*229 IV
The judgment contains the following provision:
"It is further Ordered and Adjudged that the defendant surrender to the administrator the personal articles left by the decedent, at the time of his death, consisting of a gold watch and chain, diamond ring, old Cadillac car, hunting guns and hunting dogs, and if any of these items of personal property are not in existence to be so delivered, then the defendant shall give to the receipt of the administrator its value in cash to be appraised and inventoried by the administrator for distribution according to law."
Defendant argues that this provision precludes defendant from setting up any defenses she might have on an accounting and requests a deletion of the word "surrender" and a replacement of it by the word "account," and further to strike out the balance of this provision beginning with the words "and if any of those items" and ending "for distribution according to law."
We cannot understand defendant's objections. If defendant has disposed of any of these items, then she must account and pay over in cash the value of any of said items. If defendant has any reasonable explanation as to why she disposed of any item and should not be charged with its cash value, the tribunal hearing the matter will be able to consider and decide accordingly.

V
Plaintiff additionally appeals from trial court's denial of her application for counsel fees to be paid either by defendant-widow or by the funds of the estate. Plaintiff contends that through her diligent efforts and through litigation starting in 1950 and ending in 1953, defendant was compelled to apply for letters of administration after she had claimed the estate was worth less than required for administration; that defendant was forced to admit that decedent left valuable personal properties, items listed in the findings above; that the trial court found decedent left an estate of some $17,000 *230 contrary to defendant's contentions; and therefore defendant should be compelled to pay for the legal services which plaintiff was required to procure as a result of defendant's "trickery and bad faith."
R.R. 4:55-7(b) states:
"No fee for legal services shall be allowed in the taxed costs or otherwise, except

* * * * * * * *
(b) Out of a fund in court. The court in its discretion may make an allowance out of such a fund * * *."
We hold that, in the proper exercise of its discretion, the trial court should have awarded a reasonable counsel fee to plaintiff. A counsel fee of $750 is awarded to plaintiff; one-half charged against defendant's interest in the estate and one-half charged against plaintiff's interest in the estate.
Judgment is affirmed except as to counsel fees. Costs on appeal are awarded to plaintiff and assessed against defendant-widow.